Carol DEWITT, Plaintiff,

v.

**PENN–DEL DIRECTORY CORPORATION, a foreign corporation; National Telephone Directory Corporation Profit Sharing Plan, and National Telephone Directory Corporation, Plan Administrator of Profit Sharing Plan, Defendants.**

Civ. A. No. 93–581 MMS.

United States District Court,
D. Delaware.

Dec. 22, 1994.

John M. Stull, Wilmington, DE for plaintiff.

David H. Williams, of Morris, James, Hitchens & Williams, Wilmington, DE; of counsel: Francis M. Milone, and Stacy K. Weinberg, of Morgan, Lewis & Bockius, Philadelphia, PA for defendants.

## *OPINION*

MURRAY M. SCHWARTZ, Senior District Judge.

### I. Introduction

Defendants have moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss plaintiff Carol DeWitt's complaint for failure to state a claim upon which relief can be granted. Plaintiff pleads two causes of action under the Employee Retirement Income Security Act ("ERISA"). Defendants assert that Count I of plaintiff's complaint does not entitle plaintiff to the relief requested and that Count II of her complaint is barred by the applicable statute of limitations. In response, plaintiff has filed a motion for summary judgment. This Court has jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 29 U.S.C. § 1132(f). For the reasons that follow, the Court will grant in part and deny in part defendants' Rule 12(b)(6) motion and will deny plaintiff's motion for summary judgment.

### II. Background

When addressing a motion to dismiss for failure to state a claim, the Court must construe the complaint favorably to the plaintiff and accept the complaint's well-pleaded allegations as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *In re Donald J. Trump Casino Sec. Litig.—Taj Mahal Litig.,* 7 F.3d 357, 366 (3d Cir.1993), *cert. denied sub nom. Gallomp v. Trump,* —— U.S. ——, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994). The court may generally consider only the facts alleged in the complaint and cannot refer to other parts of the record, *In re Donald J. Trump Casino Sec. Litig.—Taj Mahal Litig.,* 7 F.3d at 366, although the Court "may [also] consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994). If the Court considers materials other than the well-pleaded complaint and the materials permitted by *Pension Benefit Guar. Corp. v. White Consol. Indus.,* the Court must evaluate a Rule 12(b)(6) motion as a motion for summary judgment. *See* Fed.R.Civ.P. 12(b).

In this case, defendants have submitted the National Telephone Directory Corporation Profit Sharing Plan Amendment and Restatement (the "Plan") as an Appendix to their motion, Docket Item ("D.I.") 9, and both parties have discussed and relied upon the Plan provisions to support their respective arguments. The Court therefore concludes the Plan is undisputedly authentic, particularly as neither party has questioned the Plan's authenticity in the course of discussing and relying upon it. The Court also finds plaintiff's complaint necessarily based on the Plan, as plaintiff claims the defendants have denied plaintiff her rights under the Plan. *See* D.I. 1, ¶¶ 14–15. On these bases, the Court has gleaned the following factual background from the well-pleaded facts of the plaintiff's complaint, D.I. 1, and the Profit Sharing Plan document, D.I. 9.

Defendant Penn–Del Directory Corporation ("Penn–Del") employed plaintiff Carol DeWitt ("DeWitt") for approximately 10 years beginning on March 9, 1981. Penn–Del terminated plaintiff's employment on December 12, 1990. During the period of her employment at Penn–Del, plaintiff participat-

ed in the National Telephone Directory Corporation Profit Sharing Plan ("the Plan"), which is administered by National Telephone Directory Corporation ("National"). In addition to Penn–Del, plaintiff has named the Plan and National as defendants in this suit. At the time Penn–Del terminated plaintiff, plaintiff was 100% vested in her Plan Account.

In relevant part, the Plan document provides that each participant shall have a separate "Account" to record each participant's interest in the Plan. D.I. 9 at A–20, ¶ 6.01. The Plan provides for adjustments to individual accounts as of the Valuation Date each year, *id.* at A–20, ¶ 6.02, which the Plan defines as the last business day of each December, *id.* at A–11, ¶ 1.42. On the Valuation Date, individual accounts are adjusted "by the amount of Employer Contributions, if any, properly credited to such Account since the preceding Valuation Date," *id.* at A–20, ¶ 6.02(c), and "by the amount of Forfeitures, if any, properly credited (or charged) to such Account since the preceding valuation date," *id.* at A–20, ¶ 6.02(d). Further, on the Valuation Date, individual accounts are "allocate[d] the net increase or decrease in the fair market value of the Trust assets (resulting from income, gain, loss and expense since the preceding Valuation Date) to each Account invested in the Trust on the basis of Account balances in a uniform and consistent manner" (hereinafter "trust income"). *Id.* at A–20, ¶ 6.02(e). Furthermore, to become eligible for Employer Contribution and Forfeiture adjustments, the Plan also requires participants to be "in the employ of [Penn–Del] on the last day of such Plan Year." *Id.* at A–17—A–18, ¶¶ 5.01–5.02. To become eligible for trust income, however, the Plan does not indicate that participants must be "in the employ of [Penn–Del] on the last day of such Plan Year."

Upon her termination, plaintiff sought to withdraw the assets contained in her Plan Account. Penn–Del Division Manager Victor Raad ("Raad") advised plaintiff that it would take between 30 and 90 days to disburse plaintiff's Plan Account funds and that the Plan would credit her Account with a share of the 1990 Plan Year Employer Contribu-

tions, Plan Forfeitures, and trust income. Plaintiff requested her final distribution on December 14, 1990. D.I. 1 at ¶ 9.

Notwithstanding Raad's assertions, plaintiff received her Plan distribution on December 28, 1990, 16 days following her termination and 14 days following her request. Plaintiff's account had a net balance of $75,-520.88 at the time of the December 28 distribution. She received this entire amount and the Plan closed her Account. More importantly to plaintiff, her distribution did not include any 1990 Employer Contributions, Plan Forfeitures, or trust income. In Count I of her complaint, plaintiff asserts that she did had a right under the Plan to receive the 1990 Plan Year Employer Contributions, Plan Forfeitures, and trust income allocable to her account. In Count II, plaintiff asserts that defendants discharged her to prevent her from qualifying for the 1990 Employer Contribution, Plan Forfeitures, and trust income allocable to her account.

### III. Defendants' Rule 12(b)(6) Motion

The issue presented by a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). For that reason, a court should not grant a motion made pursuant to Rule 12(b)(6) unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the [plaintiff's] allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). The moving party holds the burden of persuasion under this standard. *Johnsrud v. Carter,* 620 F.2d 29, 33 (3d Cir.1980).

### A. Count I

In Count I, plaintiff has alleged that defendants violated 29 U.S.C. § 1132(a)(1)(B), ERISA § 502(a)(1)(B). ERISA § 502(a)(1)(B) permits an ERISA plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, [or] to enforce his

rights under the terms of the plan." Plaintiff asserts two bases of liability in support of her § 502(a)(1)(B) claim. First, plaintiff asserts that the defendants "arbitrarily and capriciously denied additional accrued benefits to [plaintiff's] account balance in the Plan for the plan year 1990 by having her benefits paid on an expedited basis by the plan administrator, contrary to Plan provisions." D.I. 1, ¶ 16. Second, plaintiff asserts that the defendants acted arbitrarily by denying Employer Contributions, Plan Forfeitures, and trust income to plaintiff, while previously giving a different terminated employee, Stephen Byrne, a share of those same benefits even though that person was not employed at the end of the plan year. *Id.*

Defendants' Rule 12(b)(6) challenges are two-fold. First, defendants argue that plaintiff does not state a claim under ERISA § 502(a)(1)(B) because she does not qualify under the Plan documents for either Employer Contributions or Plan Forfeitures. If the plaintiff does not qualify for these monies, the defendants argue, then the "expedited" date of plaintiff's final distribution is irrelevant to the issue of whether plaintiff had a right to receive 1990 Plan Year Employer Contributions and Plan Forfeitures. The Court concludes defendants are correct on this point. First, the Plan documents require the plan participant to be employed by the company on the Valuation Date to qualify for these benefits. D.I. 9 at A–18, ¶¶ 5.01–5.02. Second, no provision in the Plan indicates the Plan Administrator had discretion in the allocation of Employer Contributions or Plan Forfeitures. Third, plaintiff admits in her complaint that only those participants still employed on the Valuation Date are entitled to Employer Contributions and Plan Forfeitures in a calendar year, and the complaint does not allege that plaintiff was employed on the Valuation Date. *See* D.I. 1 at ¶ 15 ("Participant Accounts of those Participants who were in the employ of the Employer on the last day of the Plan Year will have contributions and forfeitures for the Plan Year credited to the Account of a Participant as of the Valuation date of the Plan Year"). Finally, Raad's oral representations could not amend or change the written Plan requirements. *Hozier v. Midwest Fasteners,*

*Inc.,* 908 F.2d 1155, 1163–1164 (3d Cir.1990). The Court finds, therefore, that plaintiff makes no claim that "benefits paid on an expedited basis" violated her Plan rights to receive 1990 Employer Contributions and Plan Forfeitures. D.I. 1 at ¶ 16.

▪ This means that only plaintiff's second basis for liability in Count I, the Plan's actions with respect to the previously terminated employee, Stephen Byrne, implicates any right on the part of the plaintiff to receive the 1990 Employer Contributions and Plan Forfeitures. The Court will assume because of the Rule 12(b)(6) motion that plaintiff's assertions concerning Steven Byrne are true. Plaintiff asserts that Penn–Del terminated Mr. Byrne on December 14, 1988, but that the Plan recorded Byrne's termination date as January 3, 1989, thereby qualifying Mr. Byrne for his share of the previous year's Employer Contributions and Plan Forfeitures. D.I. 1, app. A. Because both parties agree that the explicit terms of the Plan document disqualify plaintiff from 1990 Employer Contributions and Plan Forfeitures, the question for the Court becomes whether defendants' treatment of Mr. Byrne created a right in plaintiff under the Plan for treatment similar to that of Mr. Byrne. In other words, did the defendants' treatment of Mr. Byrne work to modify or amend plaintiff's Plan rights?

ERISA constrains a plan administrator to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent" with the statutory ERISA requirements. 29 U.S.C. § 1104(a)(1)(D), ERISA § 504(a)(1)(D); *see, e.g., Hlinka v. Bethlehem Steel Corp.,* 863 F.2d 279, 286 (3d Cir.1988). If a Plan Administrator fails to follow § 504(a)(1)(D), the Plan Administrator will breach its fiduciary duty to the Plan participants and beneficiaries. Because the Plan documents detail the method of Plan Amendment, the Plan Administrator must follow those instructions.

The Plan documents detail the method of amendment of the Plan. The Plan provides that Amendment of the Plan remains the exclusive right of the Company, to occur

when the Company desires, as long as the proposed amendment meets certain requirements set out in the Plan. D.I. 9 at ¶ 14.01(a)(1)–(3). Paragraph 14.01(b) states that "[t]he Plan may be amended by written instrument executed pursuant to authorization by the company." D.I. 9. These paragraphs unambiguously preclude amendment of the Plan as asserted by plaintiff. The Plan may give discretion as to *when* amendment occurs, but it does not provide discretion in *how* it occurs. Without a written instrument executed pursuant to company authorization, the Plan Administrator's actions with respect to Mr. Byrne alone do not equate to a binding plan amendment.

One additional detail prevents plaintiff from relying on the treatment of Mr. Byrne to establish that the defendants violated ERISA § 502(a)(1)(B). The Plan documents in force at the time of plaintiff's termination indicate that they became effective on January 1, 1989, after the termination of Mr. Byrne. This means that the Plan documents relied upon by plaintiff did not govern whether or not Mr. Byrne received Employer Contributions or Plan Forfeitures in the year of his termination. Thus, even if Mr. Byrne's treatment amended the Plan in force at the time Mr. Byrne was terminated, plaintiff's complaint does not allege that that Plan gave her any rights at the time of her termination or that that Plan is equal in content to the Plan documents in force when the plaintiff was terminated. In short, no legal basis exists to support plaintiff's theory with regard to the Employer Contributions and Plan Forfeitures.

■ Defendants' second response deals with plaintiff's claim of entitlement to the trust income allocable to plaintiff's account for 1990. Defendants argue that plaintiff fails to state a claim because she "requested and received a distribution of her benefits *prior* to the last business day of December," thereby forfeiting any interest in the 1990 trust income otherwise allocable to her account. D.I. 8 at 4. In support, defendants

point to paragraph 8.03 of the Plan, which directs the Trustee to make distributions "as soon as is reasonably practicable" after receiving notice of the distribution from the Plan Committee. D.I. 9 at A–25. In other words, the defendants argue that it was "reasonably practicable" to make a distribution to plaintiff on December 28 and that plaintiff cannot complain because she received her distribution earlier than she had expected or hoped. *See* D.I. 16 at 3–4.[1]

Plaintiff offers a radically different view of the Plan's distribution requirements. In contrast to the provisions regarding Employer Contributions and Plan Forfeitures, the Plan does not require employment on the last business day of December to entitle a participant to trust income. The only prerequisite to receiving trust income, by implication, is the existence of the participant's plan account on the Valuation Date, so that the Plan could credit the participant's Account with trust income on the Valuation Date. For purposes of the Rule 12(b)(6) motion, the Court accepts these characterizations of the Plan as correct. Plaintiff then contends she is entitled to the trust income because the defendants acted in violation of several Plan paragraphs that prohibit the Plan Administrator from making a final distribution prior to, at a minimum, January 1, 1991. Paragraph 8.01 of the Plan, for example, mandates that "[d]istribution *shall* be made … as soon as practicable *after the end of the calendar month* in which … termination occurs." D.I. 9 at A–25, ¶ 8.01 (emphasis added). A similar restriction on distributions exists when the Employer terminates its participation in the Plan. *See* D.I. 9 at A–39, ¶ 14.02(a)(2).[2] Furthermore, because the Plan Administrator must "act in accordance" with the Plan documents, ERISA § 504(a)(1)(D), the Administrator cannot follow paragraph 8.03 to the exclusion of the dictates of paragraph 8.01. In other words, paragraph 8.03 can only mean that distributions should be made as soon as "reasonably practicable," consistent with all other time

---

1. Defendants also urge that this interpretation of paragraph 8.03 permits the Plan Administrator to accommodate participants who may need or desire a speedy final distribution.

2. Additionally, plaintiff argues that Treasury Regulation § 1.417(e)–(1)(b)(3) requires a 30 day notice period prior to making a final distribution.

constraints on distributions imposed by the Plan or by statute. In sum, plaintiff argues that these Plan provisions prohibited her Account distribution prior to January 1, 1991.

The Court's role in a 12(b)(6) motion is not to decide between two plausible characterizations of the Plan documents. Instead, within the context of a Rule 12(b)(6) motion, the Court must accept the plaintiff's interpretation of the Plan as correct. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *In re Donald J. Trump Casino Sec. Litig.—Taj Mahal Litig.,* 7 F.3d 357, 366 (3d Cir.1993), *cert. denied sub nom. Gallomp v. Trump,* —— U.S. ——, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994). Plaintiff's interpretation of the Plan documents would permit her to recover the 1990 trust income allocable to her account, and, when viewed in this light, defendants' arguments do not carry their burden of showing that "no relief could be granted under any set of facts that could be proved consistent with [plaintiff's] allegations." *Hishon v. King & Spalding,* 467 U.S. at 73, 104 S.Ct. at 2232; *Jordan v. Fox, Rothschild, O'Brien, & Frankel,* 20 F.3d at 1261. The Court therefore concludes that plaintiff does state a claim to recover 1990 trust income under 29 U.S.C. § 1132(a)(1)(B), ERISA § 502(a)(1)(B).[3]

### B. Count II

In Count II, plaintiff alleges that defendants terminated her on pretextual grounds with the specific intent to deny her status as a Plan participant as of the Valuation Date at the end of December 1990. Plaintiff asserts her termination violated 29 U.S.C. § 1140, ERISA § 510, which makes it "unlawful to discharge ... a participant ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." Defendants' Rule 12(b)(6) motion urges that Count II is barred by the applicable statute of limitations.

The Federal Rules of Civil Procedure classify statutes of limitations as affirmative defenses to the plaintiff's claim. Fed.R.Civ.P. 8(c). The courts, however, generally agree that affirmative defenses may be asserted in a motion to dismiss under Rule 12(b)(6), "provided that the complaint shows affirmatively that the claim is barred." *Herron v. Herron,* 255 F.2d 589, 593 (5th Cir.1958); 5A Wright & Miller, *Federal Practice & Procedure* § 1357, at 348–358 (1990). In the Third Circuit, when a Rule 12(b)(6) motion raises a statute of limitations defense, the "'the time alleged *in the statement of a claim* [must] show[ ] that the cause of action has not been brought within the statute of limitations.'" *Davis v. Grusemeyer,* 996 F.2d 617, 623 (3d Cir.1993) (citing *Cito v. Bridgewater Township Police Dep't,* 892 F.2d 23, 25 (3d Cir. 1989)). No dispute exists as to the dates of the underlying events set forth in the complaint. The complaint states that Penn–Del terminated plaintiff on December 12, 1990, D.I. 1, ¶ 8, that plaintiff requested her final Plan distribution on December 14, 1990, D.I. 1, ¶ 9, that plaintiff received her final Plan distribution on December 28, 1990, D.I. 1, ¶ 9, and that plaintiff commenced this suit on December 17, 1993. The focus of the dispute centers on what limitations period applies to plaintiff's ERISA § 510 claims and from which date the applicable limitations period began to run.

Neither ERISA § 510, which provides plaintiff with her right of action in Count II, nor 29 U.S.C. § 1132, which gives the plaintiff standing to maintain her ERISA § 510 claim, establishes a statute of limitations. The Supreme Court has instructed that in this event, the district court should borrow the limitations period for the state cause of action most analogous to the federal cause of action asserted by the plaintiff. *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983); *Gluck v. Unisys Corp.,* 960 F.2d 1168, 1179 (3d Cir.1992) (borrowing state statute of limitations for a cause

---

**3.** Drawing all inferences arising from the complaint in favor of the plaintiff, the Court also concludes that plaintiff may establish a right to 1990 trust income if the 1990 Valuation Date fell on December 28, a Friday, instead of December

31, a Monday. Either of these two dates may have constituted the last business day of 1990, and the complaint does not allege which, or either, of these dates was the Valuation Date.

of action brought pursuant to ERISA § 510); *Gavalik v. Continental Can Co.*, 812 F.2d 834, 843 (3d Cir.), *cert. denied*, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987) (same); *see also National Iranian Oil Co. v. Mapco Int'l, Inc.*, 983 F.2d 485, 492 (3d Cir.1992) (citing cases borrowing state limitations periods for federal causes of action). The choice of the limitations period "is itself a question of federal law." *DelCostello v. International Bhd. of Teamsters*, 462 U.S. at 159 n. 13, 103 S.Ct. at 2288 n. 13. When determining which state cause of action is most analogous to the federal cause of action, the district court should look for a close resemblance, *United Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 705 n. 7, 86 S.Ct. 1107, 1113 n. 7, 16 L.Ed.2d 192 (1966), and "similarities in purpose and structure," *Agency Holding Corp. v. Malley–Duff & Assoc., Inc.*, 483 U.S. 143, 152, 107 S.Ct. 2759, 2765, 97 L.Ed.2d 121 (1987).

■ Both plaintiff and defendants have urged the Court to borrow a Delaware statute of limitations, notwithstanding the Plan's "Governing Law" clause. The "Governing Law" clause states "[t]e [sic] Plan and Trust shall be construed, administered and enforced according to the laws of the State of New Jersey to the extent such laws are not inconsistent with or preempted by ERISA." D.I. 9 at A–42, ¶ 15.05. The parties apparently eschew application of the Governing Law clause on the authority of *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179 (3d Cir.

1992), in which the Third Circuit expressly held that contractual choice of law provisions do not apply to ERISA § 510 limitations periods unless the choice of law provision expressly refers to statutes of limitations. *Id.*, at 1179–1180.[4] Here, the "Governing Law" clause contains no express reference to extend its application to limitations questions,[5] and the Court, therefore, will borrow a Delaware limitations period.[6]

■ Defendants assert that either 10 Del.C. § 8106 or 10 Del.C. § 8119 provides the most analogous statute of limitations for plaintiff's claim. D.I. 8 at 6. Plaintiff does not appear to disagree. *See* D.I. 12 at 10–11; D.I. 17 at 4. 10 Del.C. § 8106 provides a three year limitation period for "action[s] based on a statute" and "action[s] based on a promise." 10 Del.C. § 8119 provides a two year limitations period "for the recovery of damages upon a claim for alleged personal injuries."

To determine the most analogous state claim, the Court must first characterize the plaintiff's federal claim. The essence of the plaintiff's claim is termination to preclude attainment of a participant's rights under an ERISA plan. 29 U.S.C. § 1140, ERISA § 510; *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 143, 111 S.Ct. 478, 485, 112 L.Ed.2d 474 (1990) (ERISA § 510 designed to ensure employers would not "circumvent the provision of promised benefits"); *Habern v. Kaupp Vascular Surgeons Ltd. De-*

4. The *Gluck* court held that general federal common law choice of law principles determine which state's limitations period to borrow. *Gluck v. Unisys Corp.*, 960 F.2d at 1179; *contra DelCostello v. International Bhd. of Teamsters*, 462 U.S. at 161 n. 13, 103 S.Ct. at 2288 n. 13 ("where Congress directly or impliedly directs the courts to look to state law to fill in details of federal law, *Erie* will ordinarily provide the framework for doing so"); *see also Gluck v. Unisys Corp.*, 960 F.2d at 1180 n. 10; 19 Wright, Miller, & Cooper, *Federal Practice & Procedure* § 4515 (Supp.1994). The *Gluck* court relied on federal common law to reject application of the contractual choice of law provision and to adopt the limitations period from the state in which the district court sat.

5. For comparison purposes, the choice of law provision in *Gluck* stated "[the Plan] shall be construed regulated and administered under and

in accordance with the laws of the State of Michigan, except as pre-empted by [ERISA]." *Gluck v. Unisys Corp.*, No. 90–1510, 1991 WL 14083 at * 5 (E.D.Pa. Feb. 4, 1991).

6. After refusing to apply the contractual choice of law provision to the choice of limitations periods, the *Gluck* court also rejected an appeal to engage in "interest analysis," *id.* at 1179, and held the other state's contacts to the case "[in]sufficient to implicate [the other state]'s statute of limitations," *id.* at 1180. Following the *Gluck* approach, the Court notes that the defendants' contacts with a state other than Delaware, primarily New Jersey as defendants' state of incorporation, D.I. 1 at ¶¶ 6, are not "sufficient to implicate [a non-Delaware] statute of limitations." The Court bases this finding in part on the allegations that the employment relationship at issue occurred in Delaware and that the Plan is administered in Delaware. D.I. 1, ¶¶ 5, 22–24.

*fined Benefit Pension Plan*, 24 F.3d 1491, 1503 (3d Cir.1994) (finding Congress designed ERISA § 510 to protect the employment relationship); *Deeming v. American Standard, Inc.*, 905 F.2d 1124, 1127 (7th Cir. 1990) ("fundamental prerequisite to a § 510 action is an allegation that the employer-employee relationship ... was changed in some discriminatory or wrongful way"). Keeping this character in mind, the Court concludes that a Delaware wrongful discharge action bears the closest resemblance to and is most similar in purpose and structure to plaintiff's ERISA § 510 claim. Indeed, the Third Circuit Court of Appeals has held that a Pennsylvania district court did not err by concluding state employment discrimination claims most closely resemble an ERISA § 510 claim. *See Gavalik v. Continental Can Co.*, 812 F.2d 834, 847 (3d Cir.), *cert. denied*, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987); *see also, McLendon v. Continental Group, Inc.*, No. 83–1340, 1987 WL 19100 at *2 (D.N.J. Oct. 29, 1987).

Delaware law does not contain a statute of limitations specifically applicable to a wrongful discharge cause of action. The Delaware courts have faced a number of claims alleging wrongful discharge, however, and, in those cases, Delaware courts have consistently applied the three year statute of limitations found in 10 Del.C. § 8106. *See Goldman v. Braunstein's, Inc.*, 240 A.2d 577, 578 (Del. 1968) (applying 10 Del.C. § 8106 to claim "based upon on alleged wrongful termination of the employment contract"); *Henze v. Alloy Surfaces Co.*, No. 91C–06–20, 1992 WL 51861 *1 (Del.Super.Ct. March 16, 1992) (applying 10 Del.C. § 8106 to claim of "wrongful discharge"); *Brown v. Colonial Chevrolet Co.*, 249 A.2d 439 (Del.Super.Ct.1968). Following this line of cases, the District Court for the District of Delaware has borrowed 10 Del.C. § 8106 as the limitations period for an ERISA § 510 action. *See Rich v. Zeneca*, 845 F.Supp. 162, 166 (D.Del.1994). The litigants in this line of Delaware cases, as well

as *Rich*, however, never urged the court to adopt § 8119, Delaware's personal injury limitations period, to a wrongful discharge action; those litigants framed the issue as a choice between § 8106 and 10 Del.C. § 8111, Delaware's wage claim limitations period. Nevertheless, the Court today concludes that § 8106, not 10 Del.C. § 8119, would apply to a Delaware wrongful termination action.

The Court reaches this conclusion with little difficulty. First, this Court has previously held that the statute of limitations most analogous to 42 U.S.C. § 1983 or § 1981 wrongful discharge and employment discrimination claims was 10 Del.C. § 8106. *See, e.g., Burris v. Wright Constr. Co.*, 459 F.Supp. 157, 159 (D.Del.1978); *Trivits v. Wilmington Inst.*, 383 F.Supp. 457, 461 (D.Del.1974); *Gordenstein v. University of Delaware*, 381 F.Supp. 718, 727 (D.Del. 1974).[7] Second, the Delaware courts have clearly stated § 8106 applies to wrongful termination claims; no Delaware court has hinted that § 8119 would apply to such a claim. Third, and most important, the Court believes the Delaware Supreme Court would apply the three year limitations period to a non-preempted state law claim for denial of contractual employment benefits. Under Delaware law, a suit for breach of an employment contract arises from the loss sustained at and after the termination of the employer-employee relationship. *Goldman v. Braunstein's, Inc.*, 240 A.2d 577 (Del.1968). In *Goldman*, the termination allegedly avoided payment of a salary bonus. As such, § 8106 applied because the action was "based on a promise." *Id.* at 578. Likewise, the claim in *Henze* arose when the employee was terminated for refusing to violate RICO at the behest of the employer. *Henze v. Alloy Surfaces Co.*, No. 91C–06–20, 1992 WL 51861 *1 (Del.Super.Ct. March 16, 1992). Although employed at will, the court found the employee's cause of action controlled by § 8106. *Id.* These state actions, arising from the termi-

---

**7.** The Court recognizes that *Burris, Trivits,* and *Gordenstein* no longer reach the correct result with respect to borrowing limitations periods for Title 42 civil rights actions. *See Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). The underlying process of deciding

that § 8106 was the limitations period of the most analogous state action in *Burris, Trivits,* and *Gordenstein* remains valid, however, and supports this Court's reasoning, because federal law changed for reasons unrelated to the analyt-

nation of the employer-employee relationship, are the most analogous actions to the present ERISA § 510 claim.

At oral argument, defendants asserted that two Supreme Court decisions militate toward applying the two year Delaware limitations period for personal injury to plaintiff's claims. *See Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). In *Wilson* and *Goodman*, respectively, the Supreme Court held that district courts should borrow the general state personal injury limitations period when faced with 42 U.S.C. § 1983 and 42 U.S.C. § 1981 claims, even if the claim is based on an underlying allegation of employment discrimination.

The Third Circuit Court of Appeals has previously discussed and decided the merits of defendants' argument. It explicitly held that the *Wilson* result did not extend to claims brought pursuant to ERISA § 510. *See Gavalik v. Continental Can Co.*, 812 F.2d 834, 843–844 (3d Cir.), *cert. denied*, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987). As recognized by the Court of Appeals, the Supreme Court mandated application of the general personal injury statute for all § 1983 claims arising in a state because of "federal interests in uniformity, certainty, and the minimization of unnecessary litigation." *Wilson v. Garcia*, 471 U.S. at 275, 105 S.Ct. at 1947; *see Gavalik v. Continental Can Co.*, 812 F.2d at 843. As the *Gavalik* court noted, the Supreme Court "made no determination that the individual claims themselves were always most closely analogous to personal injury claims." *Id.* at 844. Instead, in both *Wilson* and *Goodman*, the Supreme Court reached its decision because the "federal cause of action tend[ed] in practice to 'encompass numerous and diverse topics and subtopics' such that a single state limitations period may not be consistently applied within a jurisdiction." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 357, 111 S.Ct. 2773, 2779, 115 L.Ed.2d 321 (1991) (plurality opinion) (quoting *Wilson v.*

*Garcia*, 471 U.S. at 273, 105 S.Ct. at 1945)). In other words, application of the general personal injury limitations period in § 1983 and § 1981 cases derives from the overall analytical framework for borrowing state statutes of limitations, not from the conclusion that the most analogous state limitations period to employment discrimination claims is a personal injury period. Therefore neither *Wilson* nor *Goodman* command that all borrowed state limitations periods be the state personal injury period.[8]

One final issue appears in application of the state statute of limitations. Normally, when a federal court borrows a limitations period, it borrows the entire limitations period, including state tolling rules. *Hardin v. Straub*, 490 U.S. 536, 539, 109 S.Ct. 1998, 2000, 104 L.Ed.2d 582 (1988) ("the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application, ... [c]ourts thus should not unravel state limitations rules unless their full application would defeat the goals of the federal statute at issue") (citations omitted) (affirming *Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980)); *Callwood v. Questel*, 883 F.2d 272, 274–275 (3d Cir.1989). Nevertheless, federal law determines the date of accrual because the action accrues only when the right to bring suit arises. *Kelly v. City of Chicago*, 4 F.3d 509, 510 (7th Cir.1993); *Northern Cal. Retail Clerks Unions and Food Employers Joint Pension Trust v. Jumbo Markets, Inc.*, 906 F.2d 1371, 1372 (9th Cir.1990); 19 Wright, Miller, & Cooper, *Federal Practice & Procedure* § 4515 at 145 (Supp.1994).

With these strictures in mind, the Court turns to plaintiff's argument that the applicable limitations period, 10 Del.C. § 8106, began to run on December 28, 1990, the date she received her final distribution, thereby making all of her Count II claims timely. Generally, a federal cause of action accrues when the plaintiff is "aware, or

ical basis of these cases. *See infra* text at pp. 134–135.

**8.** Although *Gavalik* predates *Goodman*, the Supreme Court decided *Goodman* on the same grounds as *Wilson*. Nothing in *Goodman* contradicts the Third Circuit's analysis in *Gavalik*. *See also McLendon v. Continental Group, Inc.*, No. 83–1340, 1987 WL 19100 *2 (D.N.J. Oct. 29, 1987) (reaching the same conclusion).

should be aware, of the existence of and source of injury, not when the potential claimant knows or should know that the injury constitutes a legal wrong." *Keystone Ins. Co. v. Houghton,* 863 F.2d 1125, 1127 (3d Cir.1988). Plaintiff argues, however, that the Court should not follow *Keystone* and instead should apply the discovery rule contained in the statutory limitations period for breaches of ERISA's fiduciary duty requirements. D.I. 12 at 11–12. This limitations period, found in 29 U.S.C. § 1113, ERISA § 413, requires "actual knowledge of the breach or violation" before the statute of limitations begins to accrue and applies, by statute, to claims brought pursuant to 29 U.S.C. § 1104. *See Gluck v. Unisys Corp.,* 960 F.2d 1168, 1177 (3d Cir.1992). Applying the ERISA § 413 discovery rule to her claim, plaintiff argues that her cause of action did not accrue until December 28, 1990, the date she had actual knowledge that she would not receive her additional benefits.

The Court rejects this proposed application of ERISA § 413 to plaintiff's ERISA § 510 claims. Count II of plaintiff's complaint is predicated on 29 U.S.C. § 1140, ERISA § 510, while ERISA § 413 provides the statute of limitations for causes of action brought pursuant to 29 U.S.C. § 1104; in other words, plaintiff simply has not brought a cause of action to which ERISA § 413 applies.[9] Other courts faced with ERISA § 510 statutes of limitations issues have routinely selected the most analogous state statute of limitations; none of these courts have applied ERISA § 413 to a ERISA § 510 claim or have combined the ERISA § 413 discovery rule with a borrowed state statute of limitations. *See, e.g., Teumer v. General Motors Corp.,* 34 F.3d 542, 546 (7th Cir.1994) (statutory ERISA limitations, including ERISA § 413, "not applicable" to ERISA § 510 claim); *Felton v. Unisource Corp.,* 940 F.2d 503, 510 n. 10 (9th Cir.1991) (statutory

ERISA limitations do not "apply to an action to enforce § 510"); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1291 (10th Cir. 1991) (holding that ERISA § 413 did not provide the limitations period to an ERISA § 510 action); *see also Gluck v. Unisys Corp.,* 960 F.2d at 1168; *Rich v. Zeneca,* 845 F.Supp. 162 (D.Del.1994).

Plaintiff does cite one case from the Eastern District of Pennsylvania to support the application of the ERISA § 413 statute of limitations to an action brought under 29 U.S.C. § 1140. *See Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Plan and Trust Agreement,* 822 F.Supp. 247, 258–262 (E.D.Pa.1993), *aff'd in part, rev'd in part on other grounds,* 24 F.3d 1491 (3d Cir.1994). The district court in *Haberern,* however, did not apply the ERISA § 413 limitations period to an ERISA § 510 action. In separate sections of its opinion, the court discussed the § 413 discovery rule and an ERISA § 510 action. Nothing in the opinion supports the conclusion that the *Haberern* court applied the § 413 discovery rule to the ERISA § 510 action, nor does anything in the opinion suggest the court addressed a limitations question in relation to the ERISA § 510 claims. Finally, to the extent that *Haberern* may be read to support plaintiff's position, the Court finds *Haberern* unpersuasive because § 413, by statute, applies only to statutory breach of fiduciary duty claims.[10] The Court rejects plaintiff's suggestion that *Haberern* controls the outcome of this issue.

■ Applying the general rule that a federal cause of action accrues when the plaintiff is "aware, or should be aware, of the existence of and source of injury, not when the potential claimant knows or should know that the injury constitutes a legal wrong," *Keystone Ins. Co. v. Houghton,* 863 F.2d 1125, 1127 (3d Cir.1988), the Court concludes the three year limitations period of § 8106 began

---

9. Plaintiff has labelled Count II of her complaint as "Count II—Fiduciary Breach and Retaliation." D.I. 1 at 7. Labelling a count in the complaint "Count II—Fiduciary Breach and Retaliation," however, does not convert the count into a § 1104 action. Count II specifically cites the statutory authority for its allegations as 29 U.S.C. § 1140. The Court further notes that plaintiff has not alleged, nor does plaintiff appear

to argue, facts in Count II of the complaint sufficient to plead a cause of action for breach of fiduciary duty.

10. The Third Circuit Court of Appeals also did not in any manner connect the *Haberern* plaintiff's ERISA § 510 claim to its discussion of the ERISA § 413 limitations period.

to run at the date of plaintiff's termination, at least with regard to Employer Contributions and Plan Forfeitures. Plaintiff knew, at the time of her termination, that her Account was no longer entitled, as per the Plan document, to receive allocations for 1990 Plan Year Employer Contributions and Plan Forfeitures. The distribution on December 28 has no significance other than confirming what plaintiff already should have known had she read the Plan document. Further, the conduct of defendants at issue, the termination, was either motivated or not motivated by unlawful intent to interfere with plaintiff's benefits as of the date Penn–Del terminated plaintiff. The Court therefore concludes that plaintiff's Count II, as it relates to 1990 Employer Contributions and Plan Forfeitures, is time barred.

Plaintiff's trust income claims present a different scenario. As discussed previously, when the Court views the Plan in the light most favorable to plaintiff, the Plan documents indicate that plaintiff would have been eligible for 1990 trust income. For that reason, even if plaintiff had read the Plan document, she would have no inkling prior to December 28, 1990, that the termination may have violated her ERISA protected rights for 1990 trust income. As a consequence, the Court holds that plaintiff's Count II, as it relates to 1990 trust income, is not time barred.

## IV. Analysis—Plaintiff's Cross Motion for Summary Judgment

Plaintiff has moved for summary judgment on the basis that defendant's Rule 12(b)(6) motion requires the Court to consider all of the allegations in the plaintiff's complaint as true. *See* D.I. 11; D.I. 12 at 5, 13. Because plaintiff's allegations are uncontroverted, plaintiff reasons, plaintiff is entitled to summary judgment on both counts. Plaintiff also argues that consideration of material outside her complaint requires consideration of defendants' Rule 12(b)(6) motion as a motion for summary judgment pursuant to Rule 56. *See* D.I. 17 at 4–5, (citing *Pfizer Inc. v. Elan Pharmaceutical Research Corp.,* 812 F.Supp. 1352 (D.Del.1993)).

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Rule 56(c) requires courts to enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Material facts" are those which, under the applicable substantive law, might affect the outcome of the suit. *Id.*

The party moving for summary judgment bears the burden to demonstrate the absence of genuine issues of material fact, regardless of which party has the burden of persuasion at trial. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir.) (in banc), *cert. dismissed,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). When the moving party bears the burden of persuasion at trial, the movant must satisfy this burden by pointing to evidence in the record that supports the movant's version of all material facts and demonstrates the absence of any genuine issue of material fact. *National State Bank v. Federal Reserve Bank,* 979 F.2d 1579, 1582 (3d Cir.1992). If the moving party does not meet this standard, the Court must deny the motion for summary judgment, even if the non-moving party does not present opposing evidentiary materials. *Id.* In other words, the moving party with the burden of persuasion at trial must show that it would be entitled to a judgment as a matter of law. *Id.* at 1582 n. 2.

Responding to the plaintiff's second contention first, the Court notes that *Pfizer* correctly states the general rule found in Rule 12(b): consideration of material extraneous to the complaint in deciding a Rule 12(b)(6) motion converts the 12(b)(6) motion to a summary judgment motion pursuant to Rule 56. *See, e.g.,* Fed.R.Civ.P. 12(b); *Pfizer Inc. v. Elan Pharmaceutical Research Corp.,* 812 F.Supp. 1352, 1358 (D.Del.1993). As discussed previously, however, the Court may consider an undisputedly authentic document

relied upon by the complaint without converting the motion to a motion for summary judgment. *See supra* text at 128–129; *accord Pfizer Inc. v. Elan Pharmaceutical Research Corp.*, 812 F.Supp. at 1358. Therefore, the Court rejects plaintiff's contention as to the conversion of the 12(b)(6) motion to a motion for summary judgment.

With respect to plaintiff's motion for summary judgment, the plaintiff bears the burden of proof at trial as to both Counts I and II of the complaint. *National State Bank v. Federal Reserve Bank*, 979 F.2d at 1582. While the Court must consider the well-pleaded allegations in the plaintiff's complaint as true for purposes of deciding *defendants'* Rule 12(b)(6) motion, defendants' motion does not relieve plaintiff of her burden under Rule 56. The plaintiff cannot meet her burden merely by relying on the assumption made for purposes of the Rule 12(b)(6) motion that all of the allegations in plaintiff's complaint are true. Rather, plaintiff must designate evidence in the record that supports her version of all material facts and demonstrates the absence of any genuine issues of material fact. *Id.* Even if the Court's consideration of the Plan document *had* converted defendants' 12(b)(6) motion into a motion for summary judgment, plaintiff has brought her own summary judgment motion and must meet her burden under Rule 56 accordingly. Because plaintiff has not satisfied Rule 56, the Court will deny plaintiff's motion for summary judgment.

### Conclusion

For the reasons stated above, the Court will grant in part, as regards the Employer Contributions and Plan Forfeitures, and deny in part, as regards the trust income, defendants' motion to dismiss for failure to state a claim in relation to both Count I and Count II. The Court will deny plaintiff's motion for summary judgment.