**Carol DeWITT, Plaintiff,**

v.

**PENN–DEL DIRECTORY CORPORATION, a foreign corporation; National Telephone Directory Corporation Profit Sharing Plan; and National Telephone Directory Corporation, Plan Administrator of Profit Sharing Plan, Defendants.**

**Civil A. No. 93–581 MMS.**

United States District Court,
D. Delaware.

Jan. 10, 1996.

John M. Stull, Wilmington, Delaware, for plaintiff.

David H. Williams, and Paul P. Rooney, of Morris, James, Hitchens & Williams; of counsel: Francis M. Milone, and Hannah Perkins, of Morgan, Lewis & Bockius, Philadelphia, Pennsylvania, for defendants.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

### I. Introduction

This action involves claims by plaintiff Carol DeWitt ("plaintiff") against defendants Penn–Del Directory Corporation ("Penn–Del"), National Telephone Directory Corporation ("NTD"), and National Telephone Directory Corporation Profit Sharing Plan ("the Plan"), (collectively, "defendants"), under Sections 502(a)(1)(B) and 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B), 1140. Plaintiff's complaint was filed on December 17, 1993, in which she sought benefits allegedly due her as a participant of the Plan for the 1990 Plan year ("Plan Year" or "1990 Plan Year"). Docket Item ("D.I.") 1.[1]

On December 22, 1994, this Court ruled on a series of motions brought by the parties to this action. *See DeWitt v. Penn–Del Directory Corp.*, 872 F.Supp. 126 (D.Del.1994) [hereinafter *DeWitt I* ]. The outcome of those motions resulted in the dismissal of plaintiff's ERISA § 502(a)(1)(B) claims for Employer Contributions and Plan Forfeitures, benefits which formed the bulk of plaintiff's prayer for relief. *Id.* at 130. The Court, however, declined to dismiss her claim for Trust Income under ERISA § 502(a)(1)(B). *Id.* at 132. The Court also dismissed plaintiff's ERISA § 510 claims for Employer Contributions and Plan Forfeitures as time-barred, but again declined to dismiss her ERISA § 510 claim for Trust Income. *Id.* at 137.

At this stage of the proceedings, plaintiff has moved for summary judgment on those claims which survived dismissal in *DeWitt I*, as well for Employer Contributions and Plan Forfeitures, benefits previously denied by this Court. Specifically, plaintiff requests the following: (1) summary judgment for Trust Income both under the Plan and on the ground that defendants breached their fiduciary duty by expediting payment prior to

---

1. The benefits allegedly due under the Plan include (1) an amount determined by the Board of Directors of NTD, representing a portion of its current profits or accumulated earnings, which is contributed to the account of each participant who is in the employ of the company as of December 31 of that year ("Employer Contributions"), *see Plan* ¶ 4.01; (2) an amount equal to that portion of a participants' total account balances which are forfeited before full vesting, allocated among participants who have completed 1,000 or more hours of service during the Plan year and were in the employ of the company as of December 31 of that year ("Plan Forfeitures"), *see Plan,* ¶¶ 1.22, 5.02; and (3) an amount equal to a portion of the net increase or decrease in the fair market value of the trust assets, measured against the value of the same for the previous year, which is contributed to each existing account as of December 31 of that year ("Trust Income"), *see Plan* ¶ 6.02(e).

the end of the Plan Year; (2) summary judgment for Employer Contributions and Plan Forfeitures on the ground that defendants breached their fiduciary duty by making misleading statements to plaintiff; (3) summary judgment for Employer Contributions and Plan Forfeitures on the ground that defendants administered the Plan in an arbitrary and capricious fashion; and (4) reconsideration of this Court's ruling that plaintiff's ERISA § 510 claims for Employer Contributions and Plan Forfeitures were time-barred. D.I. 38.

Defendants have filed a cross motion for summary judgment. They assert that summary judgment should be granted in their favor because (1) plaintiff is not entitled to Trust Income under ERISA § 502(a)(1)(B) because defendants' administration of the Plan was not arbitrary and capricious; and (2) plaintiff is not entitled to Trust Income under ERISA § 510 because she has not met her burden of proving that defendants had specific intent to interfere with her pension benefits. D.I. 41 at 3.

In addition to these cross motions for summary judgment, plaintiff has also filed a motion to compel discovery responses from defendants, including interrogatories and requests for production of documents. D.I. 34. Defendants have moved to strike plaintiff's motion to compel discovery responses. D.I. 35. Defendants argue that plaintiff's motion to compel responses should be stricken, due to plaintiff's failure to follow (1) this Court's Order of May 19, 1995, stating that "no motion be filed with the Court unless a statement is filed with the Court detailing efforts made to achieve agreement on the matters set forth in the motion," D.I. 31; (2) this Court's Scheduling Order that discovery be closed by July 17, 1995, D.I. 31; and (3) Local Rule 7.1.1, which requires any movant to make a reasonable effort to reach an agreement with opposing counsel on the matters set forth in the motion. D.I. 36.

Plaintiff's motion to compel discovery responses from defendants will be denied and defendants' motion to strike plaintiff's motion to compel discovery responses will be granted. Further, plaintiff's motion for summary

judgment will be denied, and defendants' motion for summary judgment will be granted.

## II. Factual Background

Plaintiff is a former employee of defendant Penn–Del, a Pennsylvania corporation, and had been employed by Penn–Del for approximately ten years prior to her termination, the event giving rise to the present dispute. D.I. 1, ¶ 8. She was a participant in the Plan, administered by NTD, a New Jersey corporation and a sister corporation to Penn–Del. D.I. 41 at 4. The Plan is an employee pension plan governed by ERISA. *Id.* At the time of her termination, plaintiff was 100% vested in her account under the Plan. D.I. 1, ¶ 8.

The Plan provides that Employer Contributions and Plan Forfeitures are credited to the account of Plan participants on a date referred to as the Valuation Date, December 31st of each year. D.I. 41 at 10; *see Plan* ¶¶ 5.01, 5.02, 6.02(c), (d). Specifically, the Plan requires, as a condition to receipt of these benefits, that the participant be employed as of the Valuation Date. *Plan* ¶¶ 5.01, 5.02. Additionally, the Plan provides that each participant's account will be credited with the net increase or decrease in fair market value of trust assets as measured from the last Valuation Date, an amount referred to as Trust Income. D.I. 41 at 10; *see Plan* ¶ 6.02(e). Receipt of Trust Income, unlike Employer Contributions and Plan Forfeitures, is *not* conditioned upon the participant's employment on the Valuation Date: all that is required to receive Trust Income is a viable account on the Valuation Date. *See Plan* ¶ 6.02(e).

On December 12, 1990, plaintiff, an at-will employee, was terminated from her position as sales representative for mishandling an account. D.I. 41 at 7. At her termination meeting, Victor Raad ("Raad"), Division Manager of Penn–Del, reviewed with plaintiff the incident which led to her termination. *Id.* Plaintiff admitted her misconduct and signed a statement to that effect. *Id.* Also at that meeting, plaintiff's pension benefits were discussed. *Id.* at 8. While the parties dispute exactly what was said on the topic of plaintiff's benefits, it is clear that Raad informed plaintiff that approximately a 30 to 90

day delay will generally occur before plaintiff would actually receive the distribution of the balance of her account. D.I. 1, ¶ 9; D.I. 41, Exhibit ("Exh.") C at ¶ 9. Plaintiff alleges that at this meeting, Raad told her that (1) she would not receive the distribution from her account for 30 to 90 days (leading her to believe that the check would not be processed until a date well beyond the Valuation Date), and (2) her account would include Employer Contributions, Plan Forfeitures and Trust Income through the end of the 1990 Plan Year. D.I. 1, ¶ 9. Raad, in an affidavit, states that no discussion occurred regarding the nature of the benefits which would be included in her check. D.I. 42, Exh. C at ¶ 8.

On December 14, 1990, plaintiff filled out a request for her account balance. D.I. 41 at 8. A check was issued on December 28, 1990 for her total account balance in the amount of $75,520.88. *Id.* Upon receipt of this check, plaintiff contacted Raad to inquire about the check amount, because she believed the figure was inaccurate. *Id.* at 9–10. When her discussion with Raad proved unfruitful, plaintiff pursued an appeal, pursuant to the process set forth in the Plan. *Id.* at 10; *see Plan* ¶ 9.03. Upon denial of her appeal, plaintiff filed the instant lawsuit to recover Employer Contributions, Plan Forfeitures and Trust Income for the remainder of the 1990 Plan Year, which ended on December 31, 1990. D.I. 41 at 10. Plaintiff alleges that in reliance upon Raad's representations, plaintiff filed her request for distribution on December 14, 1990. D.I. 1, ¶ 9. When the request was processed on December 28, 1990, three days before the Valuation Date, the benefits plaintiff seeks were not yet credited to the account. Plaintiff seeks relief including the amount of the benefits she believes to be due. D.I. 1 at 6.

This Court ruled on plaintiff's motion for summary judgment and defendants' motion to dismiss in *DeWitt I.* As a result, only two of plaintiff's claims for benefits were deemed viable by this Court: her claim for Trust Income under ERISA § 502(a)(1)(B), and her claim for Trust Income under ERISA § 510. The Trust Income for the 1990 Plan Year, an amount approximately between

$1,400 and $2,200, is presently in dispute before the Court.

## III. Analysis

### A. Plaintiff's Motion to Compel Discovery Responses/Defendants' Motion to Strike Plaintiff's Motion to Compel Discovery Responses

■ The Court will first consider the cross motions relating to discovery. Plaintiff has moved to compel discovery responses, D.I. 34, and defendants have moved to strike plaintiff's motion to compel discovery responses. D.I. 35. Plaintiff asserts that defendants have failed to provide responses to her requests for production of documents and interrogatories, which has made it impossible to demonstrate the facts and circumstances surrounding the administration of the Plan and subsequent distribution of her benefits. D.I. 34. Defendants argue that plaintiff's motion to compel responses should be stricken, due to plaintiff's failure to follow (1) this Court's Order of May 19, 1995, stating that "no motion be filed with the Court unless a statement is filed with the Court detailing efforts made to achieve agreement on the matters set forth in the motion," D.I. 31; (2) this Court's Scheduling Order that discovery be closed by July 17, 1995, D.I. 31; and (3) Local Rule 7.1.1, which requires any movant to make a reasonable effort to reach an agreement with opposing counsel on the matters set forth in the motion. Because the Court finds the defendants' arguments persuasive, defendants' motion to strike plaintiff's motion to compel discovery responses will be granted in full, and plaintiff's motion to compel discovery responses will be denied in full.

Local Rule 7.1.1 for the District of Delaware states:

> Unless otherwise ordered, the Court will not entertain any non-dispositive motion, ... unless counsel for the moving party files with the Court at the time of filing the motion, a statement showing that the attorney making the motion has made a reasonable effort to reach agreement with the opposing attorneys on the matters set forth in the motion.

D.Del.R. 7.1.1 (1995). Rule 7.1.1 was designed to facilitate resolution of disputes among the parties before formally requesting the Court's aid by filing motions such as plaintiff's motion to compel in the case *sub judice*. This Court also ordered the parties to attempt to resolve their discovery-related disputes prior to coming before the Court by its Order dated May 19, 1995. D.I. 31. Since both the Rule and this Court's Order are aimed at achieving the same result, plaintiff's compliance with both will be examined together.

Plaintiff served her discovery requests on defendants on June 5, 1995. Defendants responded to plaintiff's requests on July 5, 1995, well in advance of the July 17, 1995 discovery cut-off date. Plaintiff's motion to compel discovery responses was filed on July 12, 1995. Thus, plaintiff had seven days in which to contact defendants in order to resolve her problems with the responses provided by defendants. A remark made by plaintiff's counsel at plaintiff's deposition, on July 6, 1995 (one day after receiving defendants' discovery responses) reflects plaintiff's counsel's view of his obligations. Plaintiff's counsel, reviewing defendants' responses, remarked, "These aren't very responsive. I am going to fill [sic] a motion to compel. Take that back, also, along with our offer. That will be an interesting motion, too. I better get it in real quick." D.I. 42, Exh. B at 11. This type of effort cannot be construed as "reasonable." Accordingly, in light of the blatant disregard for Local Rule 7.1.1, as well as for this Court's own Order, the Court will grant defendants' motion to strike

plaintiff's motion to compel discovery responses.

## B. Motions for Summary Judgment

Both parties have submitted motions for summary judgment relating to the benefits in dispute: Trust Income, Employer Contributions and Plan Forfeitures. However, plaintiff and defendants argue different legal theories supporting their positions. The following analysis will be divided into separate discussions relating to each benefit in dispute.

### 1. *Trust Income*

#### a. *Plaintiff's Motion for Summary Judgment: Fiduciary Breach Theory*

■ Plaintiff has moved for summary judgment for Trust Income for the 1990 Plan Year, both under the terms of the Plan, *see* ERISA § 502(a)(1)(B), and as equitable restitution for the Plan Administrator's fiduciary breach in expediting payment of the account balance in order to avoid crediting such monies to her account.[2] As to her § 502(a)(1)(B) argument, plaintiff offered no argument as to why she is entitled to receive Trust Income under the Plan. However, because the Court will grant defendants' motion for Trust Income under ERISA § 502(a)(1)(B), *see infra* Part (B)(1)(b), the Court will not address this issue at this time. As to the fiduciary breach argument, plaintiff asserts that the Plan Administrator committed a fiduciary breach by "rushing payment in order to remove Plaintiff's account from the books of the Plan before the end of the year." D.I. 38 at 10. Plaintiff admits that

---

2. In *DeWitt I*, this Court refused to dismiss plaintiff's claim for Trust Income because plaintiff's and defendants' competing theories regarding entitlement to Trust Income under the Plan terms were equally plausible. *Id.* at 131–32. Plaintiff argued that the Plan did not require, as a prerequisite to receipt of Trust Income, employment as of the Valuation Date. *DeWitt I* at 131. Unlike the Employer Contributions and Plan Forfeitures provisions, which clearly require employment as of the Valuation Date, *see Plan* ¶¶ 5.01, 5.02, the Plan only requires an existing account on the Valuation Date for a participant to receive Trust Income. *See Plan* ¶ 6.02(e). The Plan expressly requires that distribution of benefits occur after the end of the calendar month in which termination occurs.

*See Plan* ¶ 8.01. Thus, the earliest date at which such distribution could have been made is January 1, 1991. This would mean that plaintiff did have an account on December 31, 1990, the Valuation Date. Defendants, on the other hand, argued that the Plan Administrator is required, under Plan ¶ 8.03, to make distributions "as soon as is reasonably practicable" after receiving notice of the distribution from the Plan Committee. *DeWitt I* at 131. Therefore, defendants were merely following the express provisions of the Plan when the distribution was made on December 28, 1990. Since these positions relating to Trust Income are not being advanced at this stage of the proceedings, the Court will not decide whose theory more accurately encapsulates the terms of the Plan.

she has no document or memorandum which would support this contention, but "[n]o other reading could be placed on this obvious ploy." *Id.* Plaintiff asserts that under the reasoning of the Third Circuit Court of Appeals recent opinion in *In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation,* 57 F.3d 1255 (3d Cir.1995), *petition for cert. filed,* 64 U.S.L.W. 3167 (U.S. Sept. 8, 1995), she is entitled to restitution as an equitable remedy because of the misleading statements made by Raad. Plaintiff asserts that the amount of such restitution arising out of the fiduciary breach is the Trust Income, irrespective of whether plaintiff was technically "off the books" at the end of 1990.

As an initial matter, defendants correctly argue in their Opposition Brief to Plaintiff's Motion for Summary Judgment that the fiduciary duty claim is not viable because it was never pleaded in the complaint. D.I. 45 at 12. This Court noted the same in *DeWitt I* at 136 n. 9 ("The Court further notes that plaintiff has not alleged, nor does plaintiff appear to argue, facts in Count II of the complaint sufficient to plead a cause of action for breach of fiduciary duty."). However, plaintiff contends that she has alleged the factual basis required for the fiduciary breach claim in her complaint, which has been further supported by her deposition testimony. The Court recognizes that resolution on the merits of this theory will expedite the proceedings by preventing the inevitable delay that would be caused by plaintiff seeking leave to amend her complaint to add a cause of action for breach of fiduciary duty. Accordingly, the Court will consider the fiduciary breach argument at this time.

■■■ On plaintiff's motion for summary judgment, the facts must be viewed in the light most favorable to the non-movant, Penn–Del. *See Bixler v. Central Pa. Teamsters Health & Welfare Fund,* 12 F.3d 1292, 1297 (3d Cir.1993). When the allegations of the non-movant contradict those asserted by the movant, the assertions of the non-movant must receive the benefit of the doubt. *Id.* at 1297–98. In this case, both parties have

presented different versions of the facts surrounding the representations made by Raad on the day plaintiff was fired. Defendants' version of the facts as to the availability of benefits to plaintiff are set forth in an affidavit submitted by Raad, which contained the following statements:

8. At the time Ms. DeWitt was terminated, I handed her a formal separation package which contained a benefits form so that she could obtain the money in her profit sharing plan account. Other than stating generally that Ms. DeWitt was eligible for the money in her profit sharing account, I made no statements regarding Ms. DeWitt's eligibility for contributions forfeitures or earnings for Plan year 1990.

9. I further informed Ms. DeWitt, as stated on the benefits form, that it takes approximately 60 to 90 days on average for a check to be cut.[3]

10. I also told Ms. DeWitt that she would be receiving information from the company regarding her COBRA benefits.

D.I. 42, Exh. C at ¶¶ 8–10. Based on the statements made by Raad in his affidavit, there was no misrepresentation made to plaintiff as to the nature or scope of her benefits under the Plan.

Plaintiff, on the other hand, states that Raad told her she would receive all contributions for the end of the 1990 Plan Year. At her deposition, the following exchange occurred:

Q. So, at your termination meeting, Victor Raad told you that you would get certain benefits?

A. Yes.

Q. I need to know what exactly he told you, to the best of your recollection.

A. He told me it was the end of the year. I would be getting my contributions, you know, I would be getting my 1990 benefits in the plan. I would want to get—if I wanted to get my money, it would take long for the checks to come out of whoever managed the plan's funds.

Counsel responded that it did not, and that Raad must have been mistaken.

---

3. At oral argument, the Court asked defense counsel whether the benefits form in fact contains such a statement. *See* D.I. 42 at Exh. G.

Q. Did he put any qualifiers on the statement that you will get the 1990 money?

A. No.

Q. You will get what you are entitled to under the plan, did he make any statements like that?

A. He told me that I would be getting—this is what he did say. He did not qualify it. There were no ifs, ands or buts. He told me I was entitled to these things. Then in January he told me he had made a mistake.

D.I. 39 at A41–A42. Plaintiff later offered the following statements relating to the receipt of her benefits check, when she discovered that the check did not include the benefits she now seeks:

The next week, I forget what day of the week it was, I was stunned to receive the profit sharing check. [Raad] told me at the time that I would be getting my year's contribution. That was the end of the year, that, you know, I would get all the stuff for the end of the year. You know, it would take 30 to 60 days—90 days ... I called him up and I said, it looked like it was an error. The contributions weren't in the [sic] there, and it didn't seem to be correct. It was for the prior balance.

D.I. 42, Exh. B at 77–78.

A genuine issue of fact exists as to what statements were made at that time. Raad states that he told plaintiff that it takes approximately 60 to 90 days for a benefits check to be cut.[4] He stated that he made *no* representations as to what benefits would be included in that check. Plaintiff states that Raad told her that the check would not be made for 30 to 90 days, and that *all* of the disputed benefits would be included in the check.[5] However, even assuming that plain-

tiff's version of the facts is correct, an assumption the Court need not make in light of the fact that plaintiff is the movant, this misrepresentation as to included benefits still does not, as a matter of law, rise to the level of a breach of fiduciary duty.

■ Section 404(a)(1) of ERISA provides that "a fiduciary shall discharge · his duties with respect to a plan solely in the interest of the participants and beneficiaries...." 29 U.S.C. § 1104(a)(1). Interpreting this provision, courts have held that a fiduciary may not, in the discharge of his duties, materially mislead those to whom such duties are owed.[6] *See Unisys*, 57 F.3d at 1264 ("Our decisions ... firmly establish that when a plan administrator affirmatively misrepresents the terms of a plan or fails to provide information when it knows that its failure to do so might cause harm, the plan administrator has breached its fiduciary duty to individual plan participants and beneficiaries."); *see also Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 234 (3d Cir.1994) (same). As one court stated, "Put simply, when a plan administrator speaks, it must speak truthfully." *Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 622, 126 L.Ed.2d 586 (1993). Material misrepresentations made by a plan administrator will therefore subject the administrator to liability for breach of fiduciary duty. *Id.* at 133–34 (citing *Payonk v. HMW Indus., Inc.*, 883 F.2d 221 (3d Cir.1989)).

■ To state a claim for breach of fiduciary duty, plaintiff must prove that a material misrepresentation was made, upon which plaintiff detrimentally and reasonably relied. *See Unisys*, 57 F.3d at 1262. A misrepresen-

---

**4.** It bears noting that this statement, standing alone, suggests nothing as to what benefits would be included in the check. Rather, this statement merely indicates the length of time plaintiff must wait before receiving the check.

**5.** The Court concluded in *DeWitt I* that the Plan does not provide for Employer Contributions and Plan Forfeitures for participants who are not employed by the company on the Valuation Date. *Id.* at 130. Raad's ability to orally amend the Plan is a dubious proposition at best. *See infra* Part B(2)(b). The Third Circuit Court of Appeals

has held that ERISA precludes oral modification of employee benefit plans. *See Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1163–64 (3d Cir. 1990).

**6.** The Third Circuit Court of Appeals has noted that 29 U.S.C. § 1104 is the vehicle for bringing a cause of action based on a common law breach of fiduciary duty theory. *See Bixler*, 12 F.3d at 1300 (acknowledging that ERISA's fiduciary duty provision incorporates the common law of trusts).

tation is material if there is a "substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision...." *Fischer,* 994 F.2d at 135; *see also Curcio,* 33 F.3d at 237 (quoting *Baker v. Lukens Steel Co.,* 793 F.2d 509, 512 (3d. Cir. 1986)) (any provision of a plan subject to ERISA that establishes a benefit is a material term of the plan). The "detrimental reliance" requirement contains two components: (1) reasonableness, and (2) injury.[7] *See Curcio,* 33 F.3d at 237; *see also Smith v. Hartford Ins. Group,* 6 F.3d 131, 137 (3d Cir. 1993). The Third Circuit Court of Appeals has held that a conclusory allegation of reliance is insufficient for the purposes of establishing a breach of fiduciary duty. *See Smith,* 6 F.3d at 137 (plaintiffs' conclusory allegations that they could have obtained alternate coverage, without more, were insufficient to withstand summary judgment). Some affirmative act of reliance is required. *See, e.g., Curcio,* 33 F.3d at 237 (plaintiff who selected new benefits plan and gave up opportunity to obtain independent insurance, in reasonable reliance on company's misrepresentations, established basis for fiduciary duty claim).

Third Circuit Court of Appeals decisions regarding breach of fiduciary duty claims under ERISA consistently require a pervasive and systematic series of misrepresentations made by the employer-fiduciary to plan beneficiaries regarding the nature of their benefits. In *Unisys,* 57 F.3d 1255, plan beneficiaries were able to maintain a cause of action for breach of fiduciary duty where defendant plan administrator "affirmatively and systematically" misrepresented benefits to the retirees in a booklet detailing plan benefits, as well as in various oral and written media. In *Curcio,* 33 F.3d 226, the employer-fiduciary had repeatedly misrepresented the nature of employee benefits in its benefits plan advertisement, including an audio-visual presentation made to employees describing the benefits. In *Fischer,* 994 F.2d at 134–35, benefits counselors made, over a period of six months, repeated misrepresentations regarding retirement benefits to every person who inquired about such benefits. *See also Smith,* 6 F.3d 131 (employer's repeated erroneous representations that plaintiff would receive same level of coverage under a new plan, as well as repeated assurances that bills would be paid, gives rise to breach of fiduciary duty claim under ERISA). In all of these cases, the misrepresentations were continuous and systematic, occurring over a period of time and through various media.

Applying these principles, attention is now turned to the present case to determine whether plaintiff has made out a case for breach of fiduciary duty arising out of the alleged misrepresentations made by Raad. Even assuming as true plaintiff's assertion that Raad told her that all of her benefits would be credited to her account, this misrepresentation does not rise to the level of misrepresentations deemed actionable by previous cases in this Circuit. Raad's statement was only one single incident of misrepresentation. There were no prolonged or repeated misrepresentations made such as in *Curcio, Unisys,* and *Fischer, supra.*[8] No booklets containing this erroneous information were presented to plaintiff; in fact, she was directed to the personnel department for information about her COBRA benefits, which would at least suggest that Raad did not feel sufficiently certain of his ability to adequately explain to plaintiff the benefits to which she was entitled. Therefore, the Court concludes that as to the misrepresentation requirement, Raad's statements do not give rise to an actionable fiduciary breach claim.

---

7. In *Curcio,* the court was called to determine, in connection with an equitable estoppel argument, whether the employer's misrepresentations regarding accidental death and dismemberment insurance coverage were material and whether plaintiff detrimentally relied on these statements. Although the court was defining these terms in connection with the doctrine of equitable estoppel, the definitions apply with equal force as they pertain to a breach of fiduciary duty claim. *Id.* at 238. Therefore, these terms have the same significance under both rubrics.

8. Furthermore, plaintiff's counsel, at oral argument, was unable to point to any case where one single statement was deemed sufficient to constitute a material misrepresentation as required for a fiduciary breach claim against a pension plan administrator.

■ Secondly, the Court concludes that the detrimental reliance requirement for a fiduciary breach claim has not been satisfied. As the court in *Smith* noted, a conclusory allegation of what one *might* have done, absent the misrepresentation, is insufficient to establish reliance. *Smith*, 6 F.3d at 137. Here, plaintiff did not state at any point in her deposition that she made her request at the early date because of Raad's statement. At oral argument, plaintiff's counsel was repeatedly asked to indicate to the Court where, in the record, it could be demonstrated that plaintiff detrimentally relied on Raad's statement. The Court was seeking some indication that but for Raad's statement, plaintiff would not have requested her account balance at the time she did. Plaintiff's counsel was unable to point to any evidence in the record which would suggest this type of reliance. In contrast, the clear inference from the record is that plaintiff did *not* rely on this erroneous advice to request her account balance, but rather, her own financial worries prompted her expedited request. In her deposition, plaintiff stated:

> I was obviously very disturbed about having been terminated. My oldest son had just begun college. I was very worried, financially, about being out of work and not having the funds to help him with his tuition. I wanted to move the funds out of there. I didn't know how long I would be out of work.... So, I mailed it out later that week.

D.I. 42, Exh. B at 77. Later, plaintiff expressly admitted her motivation:

> Q. Why did you fill paperwork out so quickly, were you in a rush to get your money out of the plan?
>
> A. I was terrified. I was terrified. I had just moved. I was paying rent on an apartment in Wilmington. I had a house in Pittsburgh that had not yet been sold. I had a child in college.

D.I. 39 at A45. The Court finds that plaintiff did not detrimentally rely on Raad's statement and thus has failed to satisfy the detrimental reliance requirement of a fiduciary duty claim.

■ Finally, even if misrepresentation and detrimental reliance could be proved, plaintiff has not shown that reliance on Raad's statement was reasonable. First, plaintiff was familiar with the respective functions of Raad, a Division Manager in charge of sales, and of someone who works in human resources or personnel, as these functions pertain to benefits knowledge and expertise. Plaintiff nonetheless alleges that Raad was the on-site representative for the Plan Administrator, an allegation which is critical to her fiduciary breach claim. However, plaintiff made the following statements in her deposition:

> Q. Victor Raad was the division manager?
>
> A. Yes.
>
> Q. Was he in HR [Human Resources], personnel at all, did he have any personnel responsibilities?
>
> A. He had overall responsibilities for all the workings. He was the division manager in the sense that he was over the sales department, and the clerical department, and customer service department, and the liaison to personnel and personnel regulations and training.
>
> Q. *Did he oversee the HR, personnel department, whatever they call it?*
>
> A. *No, that existed in the Bensalem office,* although as division manager, it was the expectation he would be completely familiar with all of the workings of, say, medical insurance and whatever.
>
> Q. You would go to Victor Raad with your questions as to what your benefits were?
>
> A. You could ask him, *he would direct you to the correct person in Bensalem to be in touch with.*
>
> Q. He would not answer the questions, he would refer you to someone else?
>
> A. He would answer the questions that he could. I was only there for three months....

D.I. 42, Exh. B at 79–80 (emphasis supplied). Clearly, plaintiff knew that Victor Raad was not the authoritative or final word as to employee benefits, if she knew that questions regarding benefits were directed to the personnel office located in another city.

This knowledge renders it difficult to find that plaintiff's reliance on Raad's statements was reasonable. Additionally, plaintiff was aware that the personnel department in the Somerset, New Jersey office was charged with handling her COBRA benefits, which also suggests that reliance on Raad's representations as to other benefits would not be reasonable.[9] In short, the Court cannot conclude that even if plaintiff detrimentally relied on Raad's misrepresentations, this reliance was reasonable.

In conclusion, plaintiff cannot make out an actionable claim for breach of fiduciary duty. She has not alleged facts sufficient under Third Circuit appellate law to demonstrate a material misrepresentation, detrimental reliance, or reasonable reliance. Accordingly, plaintiff's motion for summary judgment for Trust Income on the breach of fiduciary duty theory will be denied.

b. *Defendants' Motion for Summary Judgment: ERISA § 502(a)(1)(B) Claim for Trust Income*

■ Defendants have also moved for summary judgment for Trust Income under ERISA § 502(a)(1)(B). Defendant's motion is based on the reasonableness of the Plan Administrator's interpretation of the Plan and this Court's standard of review of the Plan Administrator's actions. D.I. 41. Defendants urge that where, like here, the Plan Administrator has discretionary authority to determine eligibility for benefits under the Plan, the exercise of discretion is subject to deferential "arbitrary and capricious" review by a reviewing court. Under this standard, defendants argue that the Plan Administra-

tor's act of denying Trust Income benefits to plaintiff should not be overturned because it was reasonable, and therefore plaintiff is not entitled to Trust Income.

■ In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989), the Supreme Court held that where an ERISA-governed benefits plan grants discretionary authority to the plan administrator to determine eligibility for benefits under the plan, a court reviewing the plan administrator's actions should apply the "arbitrary and capricious" standard of review. *Id.; see also Heasley v. Belden & Blake Corp.,* 2 F.3d 1249, 1256 (3d Cir.1993) ("Obviously, if a plan contains a clear statement of discretion, it warrants arbitrary and capricious review. . . ."); *Kay v. Thrift and Profit Sharing Plan,* 780 F.Supp. 1447, 1454 (E.D.Pa.1991) (applying arbitrary and capricious standard where plan grants administrator discretion). These cases hold that the fiduciary's interpretation of the plan will not be disturbed if it is reasonable. *See Firestone Tire,* 489 U.S. at 111, 109 S.Ct. at 954–55; *Kay,* 780 F.Supp. at 1454. The Plan in the case *sub judice* contains a clause granting discretion to the Plan Administrator.[10] *See Plan* ¶ 12.01(d). Therefore, only if the Plan Administrator's decision to deny Trust Income to plaintiff was arbitrary and capricious will the decision be overturned under this deferential standard.

In considering defendants' motion, the Court must view the facts in the light most favorable to plaintiff. *See Bixler,* 12 F.3d at 1297. Plaintiff makes no argument that the Plan Administrator's interpretation of the Plan was unreasonable.[11] Therefore, plain-

9. In her deposition, D.I. 42, Exh. B at 85, plaintiff states:

Q. You contacted someone in the company. Did [Raad] hand you your Cobra information regarding your health benefits?
A. My Cobra information arrived from the personnel department in Sommerset [sic], New Jersey.

10. Paragraph 12.01(d) of the Plan provides, in pertinent part:

*Powers of the Committee.* The Committee is specifically authorized and empowered, but not by way of limitation,

(1) To construe and interpret the provisions of the Plan whenever necessary to carry out its intention and purpose.
. . .
(3) To establish from time to time rules for the administration of the Plan and the transaction of its business. The determination of the Committee as to any disputed question arising hereunder including, but without limitation, questions of construction, administration and interpretation shall be final and conclusive upon all persons. . . .

11. Plaintiff's only argument relating to the administration of the Plan is based on the theory that the Plan was administered in an arbitrary

tiff has not alleged any relevant facts to create an issue of fact as to the reasonableness of defendants' interpretation of the Plan in this context. The Court must itself determine whether there is an issue of fact which would preclude resolution by summary judgment. If, as a matter of law, the Court determines that defendants' denial of Trust Income was based on a reasonable interpretation of the Plan, summary judgment must be granted in their favor.

Under the terms of the Plan, entitlement to Trust Income is contingent on the existence of a viable account as of the Valuation Date. *See Plan* ¶ 6.02(e). Only participants whose accounts are still in existence on the Valuation Date are entitled to have Trust Income credited to their account. Here, however, plaintiff did not have an account on the Valuation Date because her act of requesting distribution of the account balance, and the processing of that request on December 28, 1990, had the effect of closing out her account. D.I. 42, Exh. F, ¶ 3 (Affidavit of Richard F. Brady). Nonetheless, plaintiff urges that under paragraph 8.01, the Plan Administrator was forbidden from paying out the account proceeds until January 1, 1991.

Paragraph 8.01, entitled "Distribution of Benefit," provides for the timing of distribution of account proceeds. It provides, in pertinent part:

> 8.01 *Distribution of Benefit.* Any Benefit of a Participant that becomes payable under Article 7 shall be paid in the form of a single lump-sum cash distribution. Distribution shall be made under this Section 8.01 as soon as practicable after the end of the calendar month in which ... termination of employment occurs....

D.I. 42, Exh. A at 21. Defendants urged at oral argument on October 26, 1995 that paragraph 8.01's mandatory language is reasonably construed to be directed at protecting the Plan participant from unreasonable delay

in receipt of benefits. In other words, defendants argue that paragraph 8.01 prevents the Plan Administrator from taking too long to pay out benefits, but contains no prohibition on paying early. The Court agrees. It is not unreasonable to interpret paragraph 8.01 as setting the "subsequent month" rule for payment merely as a mechanism to ensure prompt payment and avoid unreasonable delay which may adversely affect the Plan participant. The Court finds that this interpretation was *not* arbitrary and capricious, but rather, grounded in the letter and spirit of the provision. Accordingly, defendants are entitled to summary judgment for Trust Income under § 502(a)(1)(B) for the 1990 Plan Year.

> c. *Defendants' Motion for Summary Judgment: ERISA § 510 Claim for Trust Income*

▮▮▮ Defendants have also moved for summary judgment for Trust Income under ERISA § 510, 29 U.S.C. § 1140.[12] This involves a determination of whether any genuine issue of fact exists as to plaintiff's claim for Trust Income under § 510. The relevant statutory provision is found at 29 U.S.C. § 1140, ERISA § 510, which provides, in pertinent part:

> § 1140. Interference with protected rights

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....

The Court of Appeals for the Third Circuit has interpreted § 510 to require proof of specific intent to violate ERISA. *Gavalik v.*

---

and capricious fashion, because a former employee, Steven Byrne, was treated more favorably when his employment was terminated. D.I. 38 at 15. However, this argument was raised in connection with Employer Contributions and Plan Forfeitures, benefits which are not being discussed at this point. *See infra* Part (B)(2)(b).

**12.** Plaintiff's brief in support of her motion for summary judgment ignores the fact that *DeWitt I* expressly ruled that plaintiff's § 510 claim as it relates to Trust Income was timely filed. *DeWitt I* at 137. Plaintiff has not specifically moved for summary judgment on her § 510 claim as it relates to Trust Income. Therefore, only defendants' motion will be considered.

*Continental Can Co.*, 812 F.2d 834, 851 (3d Cir.), *cert. denied,* 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987). Proof of incidental loss of benefits as a result of a termination will not constitute a violation of § 510. *Id.* (quoting *Titsch v. Reliance Group, Inc.,* 548 F.Supp. 983, 985 (S.D.N.Y.1982), *aff'd* 742 F.2d 1441 (2d Cir.1983)). Generally, proof of specific intent will not be demonstrated by "smoking gun" evidence, and plaintiff's evidentiary burden may be satisfied by the introduction of circumstantial evidence. *Gavalik,* 812 F.2d at 852 (quoting *Maxfield v. Sinclair Int'l,* 766 F.2d 788, 791 (3d Cir.1985), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986)). However, a plaintiff bringing a § 510 claim bears the burden of making out a *prima facie* case of discrimination. *Gavalik,* 812 F.2d at 852.

 To establish a *prima facie* case under ERISA § 510, plaintiff must demonstrate:

(1) prohibited employer conduct;

(2) taken for the purpose of interfering;

(3) with the attainment of any right to which the employee may become entitled.

*Gavalik,* 812 F.2d at 852; 29 U.S.C. § 1140. If plaintiff successfully makes out these elements, she is entitled to a rebuttable presumption of a § 510 violation. *Gavalik,* 812 F.2d at 853; *Furcini v. Equibank, NA,* 660 F.Supp. 1436, 1439 (W.D.Pa.1987).

In this case, plaintiff has made no showing of specific intent, and indeed concedes as much. "While there is no memo discussing the Employer's or the Plan Administrator's specific intent to discriminate or interfere with the natural course of things to deprive Plaintiff of her protected benefits, Plaintiff emphasizes that there has been a specific, intentional act of the Plan Administrator. No other reading could be placed on this obvious ploy." D.I. 38 at 10. It is unclear to the Court what factual basis plaintiff has for her assertion that "there has been a specific, intentional act of the Plan Administrator," when she had just admitted to having no proof on that issue and never briefed nor informed the Court as to why she is entitled to Trust Income under § 510.

Plaintiff's failure to directly put facts before the Court in connection with an ERISA § 510 claim for Trust Income necessitates a scouring of the record for potential circumstantial evidence of the elements of her *prima facie* case. *Cf. Gavalik,* 812 F.2d at 852 (specific intent is often demonstrated circumstantially). Four assertions can be gleaned from the record which might arguably provide circumstantial evidence of specific intent. First, plaintiff argues that the Plan Administrator's differential and more favorable treatment of former employee Steven Byrne ("Byrne") suggests invidious intent in her case. Second, plaintiff argues that Raad's alleged misrepresentations regarding her benefits demonstrates specific intent to interfere. Third, plaintiff argues that the expedited distribution of benefits suggests specific intent to deprive her of the amounts accruing to viable accounts on the Valuation Date. Finally, plaintiff argues that she was terminated for a trivial reason, which further demonstrates specific intent.

As an initial matter, actions which demonstrate specific intent must be separated according to the actor. The Plan Administrator's differential treatment of employees, Raad's alleged misrepresentation, and the expedited payment of benefits may only be used to infer specific intent on the part of the Plan Administrator, because any other inference would be inconsistent with plaintiff's position advanced earlier that she believed Raad spoke on behalf of the Plan Administrator. Her position on this issue was, as discussed above in Part B(1)(a), *supra,* vital to her fiduciary duty claim. However, her argument that her termination from employment was motivated by a "trivial" reason would tend to impute invidious motives to the *employer,* rather than the Plan Administrator. So separated, the Court may dismiss as irrelevant to the inquiry plaintiff's final contention that she was fired for a trivial reason: as an at-will employee, her employer had the right to fire her *for any reason.*

It follows that the Court is left with only three facts which, if true, might provide circumstantial evidence of specific intent to interfere with plaintiff's rights: (1) the differential treatment between Byrne and plaintiff

under the Plan; (2) Raad's alleged misrepresentation; and (3) the expedited payment of benefits. As discussed above, the manner in which Byrne's benefits were handled is not relevant to plaintiff's case. Even assuming the plans for the years 1988 and 1990 were identical, the employer elected to make Byrne's termination effective on January 3, 1989, see D.I. 39 at A1–A3 (Affidavit of Steven Byrne), but fired plaintiff on December 12, 1990. Each former employee's respective position relative to the Valuation Date renders the differential treatment of their benefits proper. Accordingly, the Court must determine whether Raad's alleged misrepresentation and expedited payment of benefits, standing alone, will provide sufficient evidence of specific intent to interfere with plaintiff's rights as required by plaintiff's *prima facie* pleading burden as set forth in *Gavalik*. Since defendants have moved for summary judgment on this issue, the Court must view the evidence in the light most favorable to plaintiff, see *Bixler*, 12 F.3d at 1297, and thus assumes that plaintiff's allegation regarding Raad's misrepresentation is true.

The Court is not persuaded that Raad's misrepresentation and prompt payment of benefits to plaintiff give rise to an inference of specific intent to interfere with benefits. Plaintiff's assertion of invidious intent by reason of the December 12th termination, two weeks prior to the Valuation Date, is conclusory and self-serving. Giving weight to such a conclusory statement of invidious intent on the part of the Plan Administrator would, in effect, be granting a license to all persons whose employment is terminated near the year's end to bring a § 510 claim, with or without any proof of discrimination. Further, there is nothing in the record that suggests that defendants' expedited distribution of benefits was made in order to avoid paying amounts which would be due on December 31, 1990. See *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 348 (3d Cir.1990) ("[W]e note that the record contains no evidence that the savings to the employer resulting from [plaintiff's] termination were of sufficient size that they may be realistically viewed as a motivating factor."). The Court finds that plaintiff has not met her initial

pleading burden nor alleged facts sufficient to provide circumstantial evidence of specific intent. Defendants' motion for summary judgment for Trust Income under § 510 will be granted.

## 2. *Employer Contributions and Plan Forfeitures*

### a. *Plaintiff's Motion for Summary Judgment: Fiduciary Breach Theory*

 In a somewhat unusual fashion, plaintiff resubmits a request for Employer Contributions and Plan Forfeitures allegedly due her account as of the end of the 1990 Plan Year, a request which was previously denied by this Court. See *DeWitt I* at 130. There, this Court found that the Plan documents require, as a condition to receipt of such benefits, employment as of the Valuation Date. *Id.; see Plan* ¶¶ 5.01, 5.02. Plaintiff had been terminated before that date. Therefore, this Court found that she was not entitled to Employer Contributions and Plan Forfeitures. Here, however, plaintiff has changed her theory of relief. Conceding, as she must, that the terms of the Plan do not provide for such accrued benefits, plaintiff now argues that these amounts should be granted to her as equitable relief for the Plan Administrator's fiduciary breach caused by Raad's misrepresentation of her benefits. Thus, plaintiff seeks these amounts not as damages, but rather, as equitable relief.

Defendants argue that plaintiff's request for Employer Contributions and Plan Forfeitures, to the extent that it is grounded upon a breach of fiduciary duty theory, should be denied. First, the defendants urge that the complaint does not assert a claim for breach of fiduciary duty. Second, defendants argue that even if a claim existed, it could only be asserted against the Plan Administrator, since neither the employer nor the Plan itself is a fiduciary under ERISA. Third, assuming *arguendo* that a claim could be asserted, defendants argue that plaintiff has not alleged the elements required by Third Circuit appellate law for a breach of fiduciary duty claim.

As noted above, plaintiff has both failed to plead breach of fiduciary duty in her complaint and to allege facts sufficient to make an actionable claim for breach of fiduciary duty. Since, as a matter of law, plaintiff's fiduciary duty claim fails, the Court need not address what relief should be awarded, whether damages or equitable relief. Therefore, plaintiff's motion for summary judgment for Employer Contributions and Plan Forfeitures on the fiduciary breach theory will be denied.

b. *Plaintiff's Motion for Summary Judgment: Arbitrary and Capricious Administration of Plan*

■■■ As an additional ground for recovery of the previously-denied Employer Contributions and Plan Forfeitures, plaintiff argues that the Plan was administered in an arbitrary and capricious fashion. Plaintiff alleges that in mid-December, 1988, another employee, Byrne, was terminated, yet still received benefits through the end of the Plan Year. This disparity of treatment amounts to the arbitrary and capricious administration of the Plan, according to plaintiff, and constitutes another fiduciary breach, and therefore entitles her to an equitable remedy in an amount equal to the Employer Contributions and Plan Forfeitures. Plaintiff admits that she has not examined the 1988 Plan, the plan in effect when Byrne received his benefits, but instead assumes that since discovery of the plan has been denied, "the only inference that can be drawn is that the language in the 1988 Plan dealing with Employer Contributions and Plan Forfeitures is identical or sufficiently similar to the 1990 Plan document to illustrate clearly the disparity of treatment between Byrne and Plaintiff." D.I. 38 at 16. This argument is without merit.

As an initial matter, it bears repeating this Court's observation in *DeWitt I* on this issue. This Court held that if the Plan Administrator were to provide benefits to plaintiff in contradiction to the express Plan terms, the Administrator would in effect be amending or modifying the Plan. *DeWitt I* at 130–31. The Plan Administrator does not have the discretion to modify or amend the express

terms of the Plan and is prohibited under ERISA from orally amending the written provisions of the Plan. *See Hozier*, 908 F.2d at 1163–64. The Plan provides a specific procedure for amendment. *See Plan* ¶ 14.01. Unless the Plan Administrator obtains written permission to alter the Plan terms, no amendment may occur. *Id.* Secondly, the Court noted that the Plan documents in effect at the time of plaintiff's termination became effective in January, 1989. Thus, these were not the same documents in effect in December, 1988, the period pertinent to Byrne's termination. "This means that the Plan documents relied upon by plaintiff did not govern whether or not Mr. Byrne received Employer Contributions or Plan Forfeitures in the year of his termination." *DeWitt I* at 131. Even if the documents were the same, the Court noted that plaintiff did not allege such identity in her complaint. *Id.*

Plaintiff asserts that she has been denied discovery relating to the terms of the 1988 Plan. Thus, the record does not reflect whether the plans were in fact the same. Furthermore, plaintiff has been denied discovery as to whether Raad, a Penn–Del employee, had the authority, express or apparent, to speak for the Plan Administrator, NTD. As to this point, plaintiff asserts that since Raad handled the termination procedures and produced the necessary paperwork, she had reason to believe he was accurately representing the terms of the benefits to which she was entitled. The Court need not determine whether Raad had the authority to speak for the Plan Administrator, nor whether the 1988 Plan was identical to the 1990 Plan. Even assuming that the two plans were identical, and that Raad *did* speak on behalf of the Plan Administrator, the Court concludes that the differential treatment of Byrne in 1988 and plaintiff in 1990 does not amount to an arbitrary and capricious administration of the Plan.

The assumption that the plans were identical does *not* lead to the conclusion that the two employees were similarly situated for purposes of Plan benefits, because it is necessary to distinguish between the involved entities. Penn–Del is plaintiff's former employer, who has the authority to make hiring and

firing decisions. NTD is the Plan Administrator, who is charged with the administration of the Plan as to each employee-participant in the Plan. In 1988, Penn–Del as employer made the decision to terminate Byrne effective as of January 3, 1989. D.I. 39 at A1–A3. Therefore, Byrne was still employed for the purposes of company recordkeeping on the Valuation Date, December 31, 1988. Under the express terms of the 1988 Plan (assuming the Plan was identical to the 1990 Plan), the Plan Administrator was *required* to grant all the benefits due as of the Valuation Date to Byrne's account, since he was technically still employed on that date. *See Plan* ¶¶ 5.01, 5.02, 6.02(e).

In the instant case, however, Penn–Del terminated plaintiff's employment as of December 12, 1990. She was not an employee on the Valuation Date. Under the express terms of the Plan, therefore, plaintiff was *not* entitled to any of the benefits which participants who are employed on the Valuation Date enjoy. *See id.* The Plan Administrator was therefore not authorized to grant those benefits to plaintiff in this case since, as one who was no longer employed by Penn–Del, plaintiff was no longer entitled to receive the benefits. These differences demonstrate that Byrne and plaintiff were *not* similarly situated as presented to the Plan Administrator for the purpose of distribution of benefits. Thus, differential treatment was not arbitrary and capricious, but rather, *required.*[13] Accordingly, plaintiff's motion for summary judgment for Employer Contributions and Plan Forfeitures, based on the theory of arbitrary and capricious administration of the Plan, will be denied.

c. *Plaintiff's Motion for Reconsideration: Intervening Third Circuit Appellate Decision*

■ Plaintiff's final argument requests reconsideration of this Court's previous finding that her ERISA § 510 claims were time-barred. *See DeWitt I* at 136–37. There, this Court found that the applicable statute of limitations for § 510 claims for Employer Contributions and Plan Forfeitures, as borrowed from Delaware law, is three years. *Id.* at 134. More importantly, however, this Court determined that the limitations period runs at the time of the termination, rather than from the time the plaintiff first discovered that she had suffered a legal wrong. *Id.* at 135–36. This means that the limitations period ran on December 12, 1990, the date her employment was terminated. Accordingly, the action must have been filed by December 12, 1993 in order for it to be timely. Plaintiff filed her action on December 17, 1993. The action was therefore untimely.

Proper characterization of plaintiff's present request is critical to the disposition of this argument. Plaintiff's motion is essentially one of reconsideration of this Court's ruling in *DeWitt I* that plaintiff's § 510 claims, as they pertain to Employer Contributions and Plan Forfeitures, are time-barred.[14] Plaintiff herself admits that she is moving for reconsideration:

> Recognizing that the Court in its December 22, 1994 Order and Opinion has ruled that the three-year statute of limitations on Plaintiff's claim under Sec. 510, ERISA, applies as of Plaintiff's job termination date (December 12, 1990), thereby making her Complaint untimely, Plaintiff presents her argument as one of reconsideration of this prior ruling by this Court.

D.I. 38 at 13. Given the nature of plaintiff's request and her own admission on that issue, the Court finds that her request is untimely. A motion for reconsideration has been deemed by the Court of Appeals for the Third Circuit as the "functional equivalent" of a Rule 59(e) motion to alter or amend a judgment. *Jones v. Pittsburgh Nat'l Corp.,* 899 F.2d 1350, 1352 (3d Cir.1990); *see also Federal Kemper Ins. Co. v. Rauscher,* 807

---

**13.** Since plaintiff was an at-will employee, Penn–Del had the right, as her employer, to terminate plaintiff for any reason. The arbitrary and capricious standard of review is applied to actions of the Plan Administrator, not to those of the employer.

**14.** This Court expressly held in *DeWitt I* that plaintiff's § 510 claim for Trust Income was timely filed. *See id.* at 137.

F.2d 345, 348 (3d Cir.1986). Accordingly, it must be filed within ten days of the entry of the judgment for which reconsideration is sought. *See* Fed.R.Civ.P. 59(e). Therefore, plaintiff's request for reconsideration is untimely, and should not be considered absent a change in prevailing law.

Plaintiff argues that *Whittle v. Local 641, International Brotherhood of Teamsters, AFL–CIO, Yellow Freight System, Inc.* 56 F.3d 487 (3d Cir.1995), has changed the law relied upon by this Court in *DeWitt I*. The Court disagrees. In *Whittle*, plaintiffs appealed a district court ruling that their § 301 claim under the Labor Management Relations Act, 29 U.S.C. § 185, was time-barred, and won a reversal on that issue. The court held that the limitations period, in that case, six months, begins to run when the cause is sufficiently ripe that one can maintain a suit on it. *Id.* at 489. Therefore, the earliest date on which plaintiffs could maintain a suit was after the mandatory arbitration panel rendered a judgment against them. *Id.* at 490. Since the action was filed within the period of limitations as measured from this date, the action was timely filed. *Id.*

Plaintiff argues that *Whittle* suggests that she could not have filed her § 510 claim as of her December 12, 1990 termination date because she did not know that her benefits were going to be denied at that time. Therefore, since she did not become aware of the denial of payment until she received her check (which did not include the requested benefits) on December 28, 1990, that date should begin the limitations period, and her action, filed December 17, 1993, would therefore be timely. This argument is without merit. In *Whittle*, plaintiffs suffered no legally cognizable wrong until the date on which the arbitration decision was issued. The cause of action under § 301 requires, as a precondition to filing a complaint, the exhaustion of administrative remedies. *See DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 163, 103 S.Ct. 2281, 2289–90, 76 L.Ed.2d 476 (1983); *cf. Vadino v. A. Valey Engineers*, 903 F.2d 253, 261 (3d Cir.1990). Thus, there was no cause of action under § 301 until the arbitration had terminated.

Here, however, plaintiff's § 510 claim accrues on the date her employment was terminated. As this Court observed in *DeWitt I*, plaintiff knew, at the time of her termination, that she would not receive Employer Contributions and Plan Forfeitures under the Plan, because she would no longer be an employee as of the Valuation Date, two weeks hence. *See DeWitt I* at 137. Therefore, her argument that she was unaware of the denial of benefits on that date is not persuasive: she would have known had she read the Plan documents. Accordingly, plaintiff's request for reconsideration of the time bar as it pertains to her § 510 claim for Employer Contributions and Plan Forfeitures, in light of *Whittle, supra,* leads to the same conclusion reached by this Court in *DeWitt I:* her claims are time-barred.

### IV. Conclusion

Defendants' motion to strike plaintiff's motion to compel discovery responses will be granted and plaintiff's motion to compel discovery responses will be denied. Plaintiff's motion for summary judgment will be denied in full, and defendants' cross motion for summary judgment will be granted in full. An appropriate order will issue.