725 F.2d 226
 115 L.R.R.M. (BNA) 2531, 99 Lab.Cas. P 10,723
 SCOTT, William, Jr., Victor Shelton, James Johnson, Joseph
Appezato, Daniel Davis, Izell Hodges, Thomas Czekay, James
L'Heureux, Leonard Murawski, Peter Bober, Frank Nelson,
Winston E. Thomas, Ora Lee Booker, Ralph L. Campbell, Jr.,
Robert Morris, Isaih Reece, Cordie Guyton, Leroy White,
Ronnie Cox, Samuel C. Quainoo, Steve Guyton, James E. White,
Prince Burwell, Frederick Simmons, William Scott, Adam
Gordon, George Hill, Hal Porter, Alger Jenkins, Joseph
Cogdell, Willie Lee Alexander, Walter Lee, Eugene Chestnut,
David Thomas and Issiah Rolach, Appellants,
v.
LOCAL 863, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN, AND HELPERS OF AMERICA, Food
Haulers, Inc., a Corporation Doing Business in the State of
New Jersey, and Wakefern Food Corporation, a Corporation
doing Business in the State of New Jersey.
 No. 83-5352.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
Nov. 16, 1983.
 Decided Jan. 13, 1984.
As Amended Jan. 24, 1984.
 
 Craig & Edelstein, P.A., West Caldwell, N.J., for appellants.
 Zazzali, Zazzali & Kroll, Newark, N.J., for Local 863, etc.; Kenneth I. Nowak, Newark, N.J., on the brief; Albert G. Kroll, Newark, N.J., of counsel.
 Grotta, Glassman & Hoffman, P.A., Roseland, N.J., for Food Haulers, Inc., and Wakefern Food Corp.; Stephen A. Ploscowe, Roseland, N.J., of counsel; Donald B. Shanin, Roseland, N.J., on the brief.
 Before ADAMS and BECKER, Circuit Judges, and NEWCOMER, District Judge*.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 This is an appeal from the dismissal of a suit brought by 35 laid off employees against Local 863 of the International Brotherhood of Teamsters, Food Haulers, Inc., and Wakefern Food Corporation. The laid off employees charged Local 863 with a breach of the duty of fair representation and the companies with a breach of the collective bargaining agreement. The district court found the suit to be time barred, having been filed beyond the three-month statute of limitations contained in the New Jersey Arbitration and Award statute, N.J.S.A. 2A:24-7. Since the time of the district court's ruling, however, the rule for determining which statute of limitations is applicable has been changed as a result of DelCostello v. Int'l Bhd. of Teamsters, --- U.S. ----, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). In light of DelCostello, we vacate the district court's dismissal of the suit and remand for further proceedings.
 
 
 2
 * Between October 23 and October 30, 1981, Food Haulers, Inc., a subdivision of Wakefern Food Corporation, laid off 28 employees who were members of Local 863; nine of these employees were subsequently rehired as a result of arbitration unrelated to the case at bar. [This initial group of nineteen employees will hereinafter be referred to as the "October Plaintiffs."] On April 8, 1982, Food Haulers laid off 16 more employees, including the nine who had been reinstated as a result of the arbitration. [These sixteen employees will hereinafter be termed the "April plaintiffs."]
 
 
 3
 On February 5, 1982, three-and-a-half months after the initial layoffs, Local 863 advised counsel for the October plaintiffs that it did not intend to proceed to arbitration on their behalf. As is customary under the terms of a collective bargaining agreement, only the union or the company may process a grievance to arbitration; the employees, themselves, did not have a right to do so. On February 17, the attorney for the October plaintiffs replied that the employees would appeal the decision of Local 863 to the local, as well as to the regional joint council of Teamster locals and the union's International. The joint council replied on February 22 that, since the dispute involved the interpretation and application of the local collective bargaining agreement, the matter was within the sole discretion of Local 863; the International did not respond. Local 863 granted the October plaintiffs' one last appeal to its executive board on March 5, but then advised the employees' attorney on April 7 that "Local 863, as it did in October 1981, has determined not to proceed to arbitration regarding your clients' layoffs." App. at 42. On April 8, 1982, the second group of sixteen employees was laid off. On May 14, a letter was sent by Local 863 declaring that these layoffs would also not be arbitrated. This lawsuit, covering all 35 laid off employees, was filed on October 8, 1982, under Sec. 301 of the National Labor Relations Act, 29 U.S.C. Sec. 185 (1976).
 
 II
 
 4
 The principal question on this appeal is whether the district court erred in concluding that the suit was filed in an untimely fashion. The decision by the district judge regarding the applicable statute of limitations was based on the then controlling Supreme Court case, United Parcel Service v. Mitchell, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981). Under Mitchell, federal courts were directed to look to the most "appropriate" state statute in determining the time limitations on the filing of a Sec. 301 suit:Congress has not enacted a statute of limitations governing actions brought pursuant to Sec. 301 of the LMRA. As this Court pointed out in Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 704-05 [86 S.Ct. 1107, 1112-13, 16 L.Ed.2d 192] (1966), "the timeliness of a Sec. 301 suit ... is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations." Our present task is to determine which limitations period is "the most appropriate one provided by state law." Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 462 [95 S.Ct. 1716, 1721, 44 L.Ed.2d 295] (1975). This depends upon an examination of the nature of the federal claim and the federal policies involved. See Hoosier Cardinal, supra, [383 U.S.] at 706-707 [86 S.Ct. at 1113-1114].
 
 
 5
 Id. at 60-62, 101 S.Ct. at 1562-1563 (footnote omitted). In Mitchell the Supreme Court relied upon a New York state statute governing appeals from arbitration to find a ninety-day limit for the filing of an action that would have the effect of overturning an arbitrator's ruling. Mitchell recognized that state statutes of limitation would not necessarily fit "hand in glove," id. at 64, 101 S.Ct. at 1564, but should be applied nonetheless.
 
 
 6
 Although the present case does not involve an arbitration award as such, the district court found that the issue presented was more closely akin to an appeal from an arbitration decision than to a general breach of contract claim. Consequently, it ruled that the New Jersey 90-day statute of limitations for appeals from arbitration under N.J.S.A. 2A:24-7 would be the most appropriate state statute rather than the state's six-year "catch-all" statute of limitations, N.J.S.A. 2A:14-1. Subsequent to the district court's ruling in the present case, the Supreme Court in DelCostello adopted a uniform federal statute of limitation for Sec. 301 cases.[1] Thus in light of DelCostello the governing statute of limitations for an action such as the one before us today is six months.
 
 
 7
 We must now determine whether DelCostello should apply retroactively to the case at bar. As a general rule, federal courts should apply the law in effect at the time that cases are adjudicated. Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 486 n. 16, 101 S.Ct. 2870, 2879 n. 16, 69 L.Ed.2d 784 (1981). The primary consideration in this regard is whether retroactive application will promote or retard the policies that gave rise to the change in the decisional law. Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). Viewed in light of the Supreme Court's decision to apply a uniform national statute of limitations to Sec. 301 claims, we find no obstacle to the retroactive application of DelCostello to the present case. As this Court held in Perez v. Dana Corporation, 718 F.2d 581 at 588 (3d Cir.1983), "the purpose of the DelCostello rule ... impel[s] retroactive application of that decision." But see Ernst v. Indiana Bell, 717 F.2d 1036 (7th Cir.1983), aff'g Ernst v. Indiana Bell, 112 LRRM 2565 (S.D.Ind.1982), cert. filed, 52 U.S.L.W. 3445 (Oct. 26, 1983) (Seventh Circuit affirmed district court reliance on Indiana's 90-day statute of limitations despite intervening DelCostello ruling).
 
 III
 
 8
 Under the DelCostello six-month statute of limitations the sixteen employees laid off on April 8, 1982, clearly filed their suits in a timely fashion. The suit filed by the nineteen October plaintiffs, however, presents a more difficult issue.
 
 
 9
 In order to determine whether the October plaintiffs timely filed their lawsuit, we must first ascertain when the statute of limitations began to run. If these employees were required to exhaust internal union appeals, this would be a relatively straightforward factual matter. The Supreme Court, however, has refused to require union members to exhaust all possible internal union remedies for a Sec. 301 suit to go forward. Instead the Court has created a case-by-case factual standard turning on the issue of when it becomes clear that further internal appeals would be futile. Clayton v. Automobile Workers, 451 U.S. 679, 689-93, 101 S.Ct. 2088, 2095-97, 68 L.Ed.2d 538 (1981). See also Goclowski v. Penn Central, 571 F.2d 747, 758 (3d Cir.1978) (union members not foreclosed from judicial relief when officers announce no further internal remedies available); Santos v. Dist. Council, 619 F.2d 963, 969 (2d Cir.1980) (cause of action accrues when plaintiff first could have successfully maintained a suit based on that cause of action).
 
 
 10
 One of the difficulties in the present case is establishing when the futility of further union appeals became apparent or should have become apparent to the October plaintiffs. We note that their suit was filed on October 8, 1982, almost one year after they were laid off. On February 5, 1982, the local union's attorney stated unequivocally in a letter that "Local 863 does not see any basis for proceeding to arbitration." App. at 33. The employees' counsel sent a letter on February 17, which accepted the local's letter as indicating "that the Union will take no action on behalf of my clients." App. at 34. On February 22, the attorney for the joint council also informed the plaintiffs by letter that no action would be taken on their behalf. These letters would place the October layoffs outside the six-month statute of limitations by the time of the filing of the lawsuit. Only if the April 7 letter of local counsel reaffirming the refusal by Local 863 to proceed to arbitration is taken as the termination of the internal appeal procedure and if the statute of limitations is held to begin running when that letter was received by plaintiffs' counsel (rather than the date of mailing) can this suit survive for the October plaintiffs under DelCostello.[2]
 
 
 11
 Because the district court dismissed the suit as time barred under the New Jersey three-month statute, these questions were not adjudicated. It would be inappropriate for an appellate court to attempt to resolve these factual matters in the first instance.
 
 IV
 
 12
 Accordingly, this case will be remanded to the district court for further proceedings consistent with this opinion.
 
 
 13
 BECKER, Circuit Judge, concurring.
 
 
 14
 I join in the judgment of the Court and in all but part III of Judge Adams' opinion. I write separately because I fear that the majority has established a novel and inadequately confined precedent that will, in a Vaca v. Sipes -type suit, enable a union defendant to assert the futility of exhausting its own internal remedies as a trigger for the running of the short (6 months) DelCostello statute of limitations and thereby unfairly trap unwary suitors. This concern is not academic; rather, it responds to a troublesome dilemma frequently faced by litigants in this circuit. The problem may be seen by exploring the following scenario, which mirrors the facts of this case.
 
 
 15
 Assume that an employee filed a suit under Sec. 301 of the LMRA, 29 U.S.C. Sec. 185 (1976), alleging a breach of the collective bargaining agreement by his employer and a breach of the duty of fair representation by his union, at a time when nominal procedures exist whereby the union might still activate (or reactivate) the employee's grievance. Under existing caselaw, the union can argue, subject to the limitations set forth in Clayton v. Automobile Workers, 451 U.S. 679, 689, 101 S.Ct. 2088, 2095, 68 L.Ed.2d 538 (1981), that these procedures are genuinely available and bar the defendant from suit.[1] That situation existed in this case: Local 863 originally pleaded in its answer in the district court that the action should be dismissed for want of exhaustion, but has abandoned the claim. Assume further, however, that the union argues that, because the availability of real internal remedies ceased more than six months ago and because suits against the union were thus permissible under Clayton for more than six months before the plaintiff filed suit, the DelCostello statute of limitations now bars the employee's action against it. This situation has also occurred here and yet the majority, without significant support in precedent, and without explanation, would apparently accept this argument.[2]
 
 
 16
 The problem is that, unlike other situations where the twin defenses of failure to exhaust and the statute of limitations combine to give the litigant a narrow window in which to file suit, here there is no guarantee that statutes, regulations, or other forms of clear, written notice will exist that warn the plaintiff of his peril. On the contrary, precisely because the majority here has allowed it to benefit them in litigation, union officials may well be equivocal or contradictory in their communications to dissatisfied members and may send such communications through persons within the internal union hierarchy whose authority to bind the union is at best hazy. As a result, the potential suitor will not know when exhaustion is futile.
 
 
 17
 Several harmful consequences are likely to follow from court-inspired vagueness of these union communications. First will come a guessing game. To determine whether a plaintiff's suit can go forward, overburdened district courts will be remitted to a tedious and often useless search through the vagaries of union bylaws or will be forced to rationalize informal union procedures likely to have been invented for each dispute. If it is thereby determined that the suitor has not exhausted, his day in court is, at worst, delayed. But if, in reliance on what he thought were genuine internal remedies, he refrains from suing for as much as six months, and it is ultimately determined that these remedies were illusory, his suit will be forever barred. Second, to avoid this trap, employee plaintiffs will have to file numerous precautionary lawsuits--each of which will require the courts to undertake the bootless inquiry described below--in the hopes that perhaps one of the suits will have been timed correctly.
 
 
 18
 Were this guessing game to work only to the disadvantage of employees, a case could conceivably be made that the problem is best left to the internal majoritarian processes of the union. Union members arguably might cure the problem either by voting to decertify unions that disadvantaged them in this fashion or by voting--if such be permitted--for internal union procedures that made clear when internal exhaustion occurred. However, those with a grievance against their union arising out of some breach of the duty of fair representation are not likely to have possessed the power to bring about fair and clear internal union procedures. Moreover, where the likely complexities or arbitrariness of union procedures burden the courts as well, I see no reason to defer to its alleged majoritarian processes.
 
 
 19
 I think we should eliminate guesswork by conditioning union use of this pincer defense on its compliance with a rule of fundamental fairness. Specifically, a defendant in a Vaca v. Sipes style suit under section 301 of the LMRA should be able to invoke the Clayton "futility exception" and thus start the DelCostello statute of limitations running only from the time that the employee has received from it a clear, written statement telling him that further internal appeals are futile, and the time for judicial action has begun. This would be analogous to a right to sue letter in employment discrimination law. Alternatively--and I believe equivalently--the union may start the statute of limitations running by waiving (in equally express terms) any reliance on its right under Clayton to bar suits for the failure of the employee to exhaust internal union remedies.
 
 
 20
 Accordingly, I would remand this case to allow the district court to determine whether and when the other plaintiffs were given such notice by the union defendants. If they were not, I would let their suit proceed.
 
 
 
 *
 Hon. Clarence C. Newcomer, United States District Court for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 Mitchell anticipated DelCostello in the following footnote:
 Amicus the American Federation of Labor and Congress of Industrial Organizations has filed a brief arguing that, in cases such as the present, courts should apply the 6-month limitations period found in Sec. 10(b) of the National Labor Relations Act, 29 U.S.C. Sec. 160(b). The AFL-CIO distinguishes the above-quoted language from Hoosier Cardinal on the ground that Hoosier Cardinal involved a Sec. 301 action by a union against an employer, while actions brought by employees against both their union and employer pursuant to our decision in Vaca v. Sipes, 386 U.S. 171 [87 S.Ct. 903, 17 L.Ed.2d 842] (1967), and Hines v. Anchor Motor Freight, Inc., 424 U.S. 554 [96 S.Ct. 1048, 47 L.Ed.2d 231] (1976), are hybrid Sec. 301 breach-of-duty actions, the union's duty being implied from the NLRA. We decline to consider this argument since it was not raised by either of the parties here or below. See Bell v. Wolfish, 441 U.S. 520, 532, n. 13 [99 S.Ct. 1861, 1870, n. 13, 60 L.Ed.2d 447] (1979); Knetsch v. United States, 364 U.S. 361, 370 [81 S.Ct. 132, 137, 5 L.Ed.2d 128] (1960). Our grant of certiorari was to consider which state limitations period should be borrowed, not whether such borrowing was appropriate.
 451 U.S. at 60 n. 2, 101 S.Ct. at 1562 n. 2.
 
 
 [2]
 Should the district court find that under the applicable rules the mailing date begins the running of the statute of limitations, this would preclude suit by the October plaintiffs regardless of when the futility of further internal union appeals is determined to have become apparent. Although we agree with Judge Becker that the determination of a standard by which to ascertain conclusively when the point of futility in internal union appeals is reached is a worthy task, we do not believe that this is a propitious occasion to make such a determination. Because the present case was dismissed as time barred, we are without a factual record and without benefit of district court input into the crafting of this legal standard. Moreover, this point has neither been briefed nor argued for this appeal. Under these circumstances we believe it is inappropriate at this time for us to define the precise criteria by which a district court is to determine when the point of futility is reached in internal union proceedings for purposes of tolling the statute of limitations
 
 
 [1]
 Clayton establishes that district courts have discretion whether or not to require exhaustion of internal union procedures
 In exercising this discretion, at least three factors should be relevant: first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under Sec. 301; and third whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.
 451 U.S. at 689, 101 S.Ct. at 2095. Clayton and Goclowski, cited in part III of the majority opinion, discussed only the availability of the "exhaustion defense" to unions and employers sued under section 301. Neither dealt at all with the union's ability to invoke the futility of its own nominally available remedies as a method of barring suits against it. While the statute of limitations should logically begin to run no later than the moment when exhaustion occurs, I do not believe this fact means--and I do not read the majority opinion as taking it to mean--that the conditions under which a defendant union may invoke the exhaustion defense are precisely the inverse of the conditions under which it may start the statute of limitations running.
 
 
 [2]
 It is conceivable that the majority has simply deferred outlining the precise contours of the defense it establishes until a district court has held the defense to bar suit. While I sympathize with the desire not to decide unnecessary issues, I believe it is preferable here to specify the rule of law to be applied on remand. The factual record is ample, and the issue squarely before us