**Charles E. WILLIAMS, Plaintiff,**

**v.**

**CHRYSLER CORPORATION, Local 1183, United Automobile Aerospace and Agricultural Implement Workers of America, and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, Defendants.**

**No. CIV.A. 97–68 MMS.**

United States District Court,
D. Delaware.

Jan. 7, 1998.

Clark C. Kingery, Clark C. Kingery, P.A., Wilmington, DE, for Charles E. Williams.

Christopher Poverman, Semmes, Bowen & Semmes, P.C., Wilmington, DE (Richard T. Sampson, Jonathan R. Topazian, Semmes, Bowen & Semmes, P.C., Washington, DC, of counsel), for Chrysler Corp.

Stephen B. Potter, Stephen B. Potter and Associates, Wilmington, DE (Richard H. Markowitz, Markowitz & Richman, Philadelphia, PA, of counsel), for Local 1183, United Automobile, Aerospace and Agricultural Implement Workers of America and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

### I. Introduction

Charles E. Williams ("Williams") instituted this action under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S .C. § 185 (1978), against Chrysler Corporation ("Chrysler" or "Company"), the United Auto Workers ("UAW") Local 1183, and the United Automobile, Aerospace and Agricultural Implement Workers of America, UAW (collectively "the Unions"). Complaint, Docket Item (D.I.) 1. Plaintiff alleges that Chrysler, his former employer, wrongly discharged him in violation of the applicable collective bargaining agreement. See D.I. 1, at 9–10. Plaintiff alleges that the Unions, both of which he was a member while employed at Chrysler, breached their duty of fair representation by not grieving plaintiff's discharge all the way through the arbitration process outlined in the collective bargaining agreement. See D.I. 1, 10–11. In addition, plaintiff brings a claim against Chrysler for violation of the Employee Retirement Income Security Act ("ERISA") Section 510, 29 U.S.C. § 1140 (1985), alleging interference with his rights to potential employee health benefits. Lastly, plaintiff alleges that Chrysler and the Unions breached the implied covenant of good faith and fair dealing under Delaware state law.

Pursuant to a Rule 16 Scheduling Order, the Court ordered defendants to file any case dispositive motions premised on affirmative

defenses based on limitations, laches, and the exclusivity of proceedings before the Public Review Board. Pending now before the Court are Chrysler's and the Unions' motions for summary judgment which are limited to the aforementioned, case dispositive, affirmative defenses. The Court has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over the state claims under 28 U.S.C. § 1367. For reasons which follow, both Chrysler's and the Unions' motions for summary judgment will be granted.

## II. Factual Background

On June 23, 1987, Williams was terminated from his employment at the Chrysler Newark Assembly Plant on the basis of excessive absenteeism under the Chronic Absentee Procedure of the collective bargaining agreement.[1] A grievance was filed by the Local on behalf of Williams based on Williams' contention that his heart condition was an excludable condition under the Chronic Absentee Procedure. Because the Union did not believe that Williams had a legitimate grievance against the Company, on June 30, 1988, the Union withdrew Williams' grievance from arbitration under the collective bargaining agreement.[2] Williams filed an internal union appeal of the withdrawal on August 18, 1988.

The procedure for appealing the disposition of an employee's grievance is set out under Article 33 of the UAW Constitution. First, the employee may appeal to the UAW's International Executive Board ("Executive Board"). A decision of the Executive Board may then be appealed to the UAW's Public Review Board. The Public Review Board is an independent panel of esteemed law professors and labor relations experts who are appointed by both previous Public Review Boards and the UAW. Under Article 33, Section 5 of the UAW Constitution, full and complete exhaustion of the Union's internal administrative remedy is required before a civil action may be brought in federal court.[3]

On January 17, 1989, an appeals committee of the Executive Board conducted a hearing on Williams' appeal. The Executive Board adopted the findings of the appeals committee and ruled for the Union. In response to the Executive Board decision, Williams brought his appeal to the Public Review Board, which heard oral argument on November 18, 1989. On March 9, 1990, the Review Board found that Williams was entitled to the benefit of the review procedure provided by the Chronic Absentee Procedure whereby the excludability of an illness may be determined. *See* Public Review Board, Opinion of March 9, 1990, D.I. 22, Exhibit 1, at 7. Therefore, the Public Review Board remanded the case back to the Executive Board with instructions that the record be further developed through medical evidence to determine if Williams' heart condition was excludable under the Chronic Absentee Procedure. In particular, the Review Board focused the remand on whether bronchitis may be caused by heart disease.

Thereafter, Williams terminated the services of his attorney and decided to proceed *pro se* in the matter. There were no further developments between March 18, 1992 and June 1995.[4] In June of 1995, Williams con-

1. Under the Chronic Absentee Procedure provided for in the collective bargaining agreement, protection is afforded to employees who are absent from work due solely to disability resulting from serious sicknesses or injuries. *See* D.I. 20, at 2. These "excludable" illnesses are listed in the Chrysler Corporation/UAW Medical Guidelines. *See* D.I. 18, Exhibit D. If an illness is deemed excludable under the applicable medical guidelines, absences resulting from such illnesses are not counted against employees in determining absentee rates for purposes of discipline, including counseling and termination of employment. *See* D.I. 20, at 2.

2. The Union did grieve Williams' termination through the first three steps of the grievance process outlined by the collective bargaining agreement. The Union declined only to proceed to arbitration on the grievance, which was the next step in the grievance process.

3. Both parties concede that nowhere in Article 33, Section 5 of the collective bargaining agreement is a request for reconsideration mentioned as a *sine qua non* for exhaustion.

4. Up until March 18, 1992, Williams, through his attorney, had been attempting to compile the needed medical evidence to bring before the Executive Board. Apparently, Williams suffered a severe stroke and had to be hospitalized.

tacted the Public Review Board and asked for certain documents that he lost and made clear that he was now representing himself. On January 9, 1996, the Public Review Board issued another decision finding that Williams' illnesses were not excludable under the Chronic Absentee Procedure. *See* Public Review Board, Opinion of January 9, 1996, D.I. 22, Exhibit 2, at 10. On April 24, 1996, through newly retained counsel, Williams sought reconsideration of the Board's decision. On August 21, 1996, the Review Board issued an Order denying the Appeal on Reconsideration finding that "appellant's request for reconsideration was not filed within the [30 day] time [period] permitted," by the Public Review Board's Rules of Procedure. *See* Public Review Board, Order of August 21, 1996, D.I. 22, Exhibit 10; *see also* Rules of Procedure of the Public Review Board, Series 14, Rule 11, D.I. 26, at 4–5. This lawsuit followed on February 19, 1997.

### III. Standard of Review

Defendants seek summary judgment pursuant to Fed.R.Civ.P. 56. Under Rule 56, in order for the Court to enter summary judgment, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R .Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The substantive facts will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Only if a fact might affect the outcome of the suit is it material. *See id.*

The non-moving party must make a "showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *See Celotex,* 477 U.S. at 322. The non-moving party cannot just rely "upon bare assertions, conclusory allegations or suspicions." *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985). The Court resolves conflicting evidence in favor of the plaintiff, does not engage in credibility deter-

minations, and draws all reasonable inferences in favor of the plaintiff. *See Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1072 (3d Cir.1996) (en banc).

### IV. Discussion

The defendants assert Williams' complaint is time-barred by the six-month statute of limitation which applies to Section 301 hybrid actions. In addition, Defendant Unions contend the plaintiff is bound by the decision of the Public Review Board under the internal appeal procedure of the UAW Constitution. Defendant Chrysler also maintains that the ERISA interference claim was not timely filed. Lastly, both Chrysler and the Unions aver that the breach of the implied covenant of good faith and fair dealing claim was not timely filed.

Plaintiff responds that his Section 301 claim was timely filed because the six-month statute of limitations applicable to this action was tolled while plaintiff attempted in good faith to resolve his claim through the internal union appeal procedure. Therefore, the limitations period did not start to run until August 21, 1996 and this claim is not time-barred. Plaintiff also contends that since the internal union procedure is not exclusive, he is not bound by the determination of the Public Review Board. Lastly, plaintiff contends his claims under ERISA and state law were tolled as against Chrysler or did not accrue as to the Union, until the underlying Section 301 action accrued on August 21, 1996.

Because the Court finds that plaintiff's Section 301, state contract, and ERISA interference actions are all time barred under the applicable limitation periods, the Court need not address plaintiff's argument concerning the exclusiveness of the Public Review Board's procedures.

### A. *Statute of Limitations Analysis Under Section 301*

■ There is no dispute between the parties that the applicable statute of limitations for Section 301 actions is six months. *See DelCostello v. Int'l Brotherhood of Teamsters,* 462 U.S. 151, 164–65, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Because Section 301 is a

hybrid action against both the Unions for breach of their duty of fair representation and against Chrysler for wrongful termination under the collective bargaining agreement, the six-month statute of limitation applies simultaneously to both causes of actions made under the Section 301 suit. *See Vadino v. A. Valey Engineers,* 903 F.2d 253, 261 (3rd Cir.1990). That being said, the issue which must be resolved is when did the limitations period accrue.

Williams contends that his filing of a request to reconsider with the Public Review Board tolled the statute of limitations until the Review Board rendered its decision on August 21, 1996. Because this complaint was filed on February 17, 1997, Williams maintains that this action is not time-barred because it was brought within the six-month limitation period. Further, Williams asserts that because further intra-union appeals were not futile, the statute of limitations periods still had not accrued. Lastly, Williams maintains that his good faith belief that he was exhausting the intra-union appeal process should suffice to toll the applicable statute of limitations. Defendants, on the other hand, argue that a request to reconsider filed with the Review Board does not toll the statute and that the proper time of accrual of this action was shortly after January 9, 1996, when Williams received notice from the Review Board that his appeal was denied on the merits.

The issue presented by the parties then is whether a plaintiff's motion to reconsider a Public Review Board ruling should toll the Section 301 six-month limitations period. For the reasons enunciated below, the Court holds Williams' request for the Public Review Board to reconsider its decision does not toll the six-month, Section 301 limitations period.

### 1. *Motion to Reconsider Does Not Toll Applicable Limitation Period*

It is well settled Third Circuit Court of Appeals case law that the six-month statute of limitations period starts to run for Section 301 hybrid suits when, "it is sufficiently ripe [so] that one can maintain suit on it." *Whittle v. Local 641, Int'l Brotherhood of Teamsters, AFL–CIO, Yellow Freight System, Inc.,* 56 F.3d 487, 489 (3d Cir.1995). In addition, "[w]hen a grievance procedure does apply, the employee-plaintiff is required to at least attempt to exhaust his or her remedies under that procedure before a § 301 suit can be filed against the employer." *Id.* at 490; *see also Walker v. Chrysler Corp.,* 601 F.Supp. 1358, 1361 (D.Del.1985) ("employee ... must attempt to exhaust any exclusive grievance ... procedure[ ] established by that agreement ...."). It is undisputed that under Article 33 of the UAW Constitution, plaintiff had to exhaust his intra-union appeals before he could bring this suit in federal court. However, it is also conceded by both parties that a request for reconsideration was not required under the UAW Constitution to exhaust administrative remedies.[5] The Court therefore finds that Williams' Section 301 suit was ripe shortly after the Public Review Board issued its decision on January 9, 1996 and Williams thereafter received the decision in the mail. At that time, Williams was sufficiently aware that he suffered a loss from the union's and the company's alleged breaches. Assuming that it took one week, at the most, for the Review Board decision to reach Williams by mail, the action accrued on January 16, 1996.[6] His action is therefore

---

5. Even if, *arguendo,* it was necessary to file a request for reconsideration in order to exhaust administrative remedies, Williams waived this requirement by not filing his request for reconsideration within the applicable thirty day time period because he filed it on April 26, 1996, clearly more than thirty days after receipt of the Review Board's decision. *See* Rules of Procedure of the Public Review Board, Series 14, Rule 11, D.I. 26, at 4–5 ("Within 30 days following receipt of a decision of by the PRB, any party may file a written request for reconsideration. The request for reconsideration shall identify specifically errors of material fact or erroneous

conclusions which are set forth in the PRB's written decision. The PRB shall provide a written response to the request for reconsideration setting forth its reasons for granting or denying the request.").

6. Williams, in his deposition testimony, could not remember when he received the January 9th Review Board decision. "Mail which is properly addressed and mailed postage prepaid is presumed to be duly received by the addressee, but such a mailing must be proven in order to activate the presumption." *See Tisch Family Foundation, Inc. v. Texas Nat'l Petroleum Co.,* 326

time barred because he did not meet the six-month limitations period when he filed this complaint thirteen months after his action accrued.

To hold otherwise would mean the Court would have to read terms into the collective bargaining agreement that do not presently exist. In particular, it would be necessary to read a requirement into the agreement to file a request for reconsideration before exhausting one's grievance procedures. Because the Court does not find the applicable terms of the collective bargaining agreement to be ambiguous, the Court declines to read any such language into the agreement. *See Northwestern Nat'l Ins. Co. v. Esmark, Inc. et. al.*, 672 A.2d 41, 43 (Del.Supr.1996) ("Where the contract language is clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning. [citations omitted] Courts consider extrinsic evidence to interpret the agreement only if there is an ambiguity in the contract. [citations omitted]."); *Cincinnati SMSA Ltd. Partnership v. Cincinnati Bell Cellular Systems, Co.*, 1997 WL 525873, at *3 n. 11 (Del.Ch. August 13, 1997) (same).

Williams also argues that because the futility of his intra-union appeals had not yet become apparent, the statute of limitations did not accrue until the August 21, 1996 request for reconsideration decision. Williams cites *Vadino*, 903 F.2d at 260, for the proposition that, "the statute of limitations begins to run when 'the futility of further union appeals become apparent or should have become apparent'". *See id.* (quoting in part *Scott v. Local 863, International Brotherhood of Teamsters*, 725 F.2d 226, 229 (3d Cir.1984); *Lewis v. Int'l Brotherhood of Teamsters*, 826 F.2d 1310, 1317 (3d Cir.1987) (same)). However, in a footnote the Third Circuit Court of Appeals also noted that in a

somewhat different situation where the plaintiff's grievance has proceeded to a final decision by the arbitration board, we

have held that the claim accrues at the time the plaintiff knows, or should have known, the arbitration decision, rather than when s/he should have reasonably known that further appeals to the union would be futile.

*See Vadino*, 903 F.2d at 261 n. 11 (citing *Childs v. Pennsylvania Fed. Brotherhood of Maintenance Way Employees*, 831 F.2d 429, 436 (3d Cir.1987)). This case, although not a final arbitration decision, is akin to a final decision at the end of a grievance process. As such, the statute of limitations accrues when Williams knew, or should have known, about the final Review Board decision; somewhere between January 9 and January 16, 1996.

■ As for Williams' argument that his good faith belief that he was attempting to exhaust the grievance procedure should suffice to toll the applicable limitations period, the Court is unpersuaded. Preliminarily, Williams has cited to the Court no Third Circuit Court of Appeals case law that advances the good faith analysis. Further, although other circuits have held that, "[i]f the ... employee ... pursues his nonjudicial remedies in good faith, the limitations period is tolled until the nonjudicial proceedings are completed," *see, e.g., Lancaster v. Air Line Pilots Association Int'l*, 76 F.3d 1509, 1528 (10th Cir.1996) (citing *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 421–22 (10th Cir.1990)); *Galindo v. Stoody Co. et. al.*, 793 F.2d 1502, 1510 (9th Cir.1986); *Adkins v. Int'l Union of Electrical, Radio & Machine Workers*, 769 F.2d 330, 336 (6th Cir.1985), these cases are inapposite to the present case. In those cases, the alleged breach of duty of fair representation arose outside the context of processing a grievance, e.g., where assessment of union dues was at issue. The Court can find no grievance procedure cases that apply the good faith test and is not persuaded it should do so in this case.

Lastly, the Court is guided by analogous Third Circuit Court of Appeals case law in

F.Supp. 1128, 1132 (D.Del.1971). Defendant Unions have provided the affidavit of David Y. Klein, the Executive Director of the Public Review Board, which states that a copy of the January 9, 1996 decision was mailed to Williams

on January 9, 1996. Finding no evidence to the contrary, the Court holds Williams duly received the judgment within a week after mailing or at the latest, January 16, 1996.

which the Court held that the filing of a request for reconsideration, absent statutory language to the contrary, does not toll the relevant statute of limitations. In*McCray v. Corry Manuf. Co.*, 61 F.3d 224, 225 (3d Cir. 1995), the plaintiff filed an action against her former employer under the Age Discrimination in Employment Act ("ADEA"). After investigating plaintiff's claim, the EEOC issued a determination that there was no reasonable cause to believe the employer discriminated on the basis of age. *Id.* Less than thirty days later, plaintiff requested that the EEOC reconsider its findings. *Id.* at 226. The EEOC also denied the request for reconsideration ruling that most of the facts set forth in her request were time barred by the statute of limitations for filing charges of discrimination. *Id.* Thereafter, the plaintiff in *McCray* failed to file a complaint in the federal court within ninety days after the original EEOC decision. *Id.*

The *McCray* Court found that even though requests for reconsideration tolled the applicable limitations period for Title VII and Americans with Disabilities Act ("ADA") civil actions, *see* 29 C.F.R. § 1601.19(b) (1993), there was no similar provisions for ADEA actions. *Id.* at 228. As a result, the Court declined to extend the reconsideration provisions of § 1601.19(b) to ADEA claims, absent any applicable statutory provision instructing the Court to do so. *See id.* The *McCray* Court held that merely requesting reconsideration of an EEOC Determination does not toll the ninety day statute of limitations controlling the filing of a civil action, and therefore, plaintiff's claim was time-barred. *Id.* at 229.

Although decided in a different context, the Court finds *McCray* to be persuasive additional authority. Like the plaintiff in *McCray*, Williams received a negative determination from the agency to which he brought his grievance. After receiving the denial of his appeal, Williams sought to have the Public Review Board's determination reconsidered. The Review Board denied Williams' request for reconsideration because, like the plaintiff in *McCray*, he had not met the applicable statute of limitation period under which such motions must be filed. Moreover, as in *McCray*, there is no applicable statute for Section 301 actions that allows requests for reconsideration at the grievance level to toll the statute of limitations as there is in Title VII and ADA suits.

The only difference between the *McCray* case and the case at bar is that in *McCray* the agency involved was a governmental agency, i.e., the EEOC, and in this case the agency involved is an independent appeals board of the UAW. The private/public agency distinction is of no import. What is important is both plaintiffs attempted to file motions for reconsideration with agencies whose procedures they had to exhaust properly before bringing a civil action and both plaintiffs contend that the bringing of the motion should toll the applicable statute of limitations.

The Court, applying the holding of *McCray* to the facts of this case, finds that Williams' merely requesting reconsideration of a Public Review Board ruling did not toll the six-month statute of limitations controlling the filing of a civil action. *See id.* As a result, his Section 301 action accrued for purposes of the limitations period on January 16, 1996, when he approximately received the determination of the Public Review Board. He did not file his complaint in this Court until February 19, 1997, a full thirteen months after the Review Board decision. Therefore, the Court holds that plaintiff's Section 301 action was untimely filed and as a result, is time-barred under the applicable six-month statute of limitations.

**B. *Statute of Limitations Analysis For ERISA and State Contract Action***

Williams contends that Chrysler interfered with his rights under certain employee benefit plans in violation of ERISA Section 510 and that both Chrysler and the Unions breached the covenant of good faith and fair dealing under Delaware contract law by reason of his termination of employment on June 23, 1987. Williams believes that the accrual date for these causes of action should be August 21, 1997, the time when he believes his underlying Section 301 action accrued. Chrysler argues that the ERISA cause of action is time-barred under the

ERISA statute of limitations. Both Chrysler and the Unions also contend that the Delaware contract claim is time-barred under the applicable Delaware contract statute of limitations.

■ The limitations period for an ERISA Section 510 claim, as borrowed from Delaware law, has been determined by this Court to be three years. *See DeWitt v. Penn–Del Directory Corp.*, 912 F.Supp. 707, 723 (D.Del. 1996). In *Dewitt*, this Court also decided that the limitations period runs at the time of the termination from employment, rather than when plaintiff first discovers he has suffered a legal wrong. *See id.* Applying this legal precedent, Williams' ERISA claim accrued on June 23, 1987, the day he was terminated from Chrysler. Because Williams' claim does not fit within the applicable three years limitations period, Williams' ERISA Section 510 claim is time-barred.

■ As for plaintiff's state law action for breach of the implied covenant of good faith and fair dealing, the applicable limitations period is also three years. DEL. CODE ANN. tit. 10, § 8106 (1975). Under Delaware law, a contract claim accrues at the time of the breach. *See Wright v. ICI Americas Inc.*, 813 F.Supp. 1083, 1093 (D.Del. 1993). The implied covenant was breached on the day that Williams was terminated, i.e., June 23, 1987. As a result, Williams' state contract claim is also time barred.

The Court therefore will grant summary judgment for defendants on all of plaintiff's causes of actions.